# SUPREME COURT

#### OF THE

## STATE OF MISSOURI,

#### JULY TERM, 1853, AT JEFFERSON CITY.

18 333
102 92
18 333
f152 517
18 333
j167 251

~~~~~~~~~~~~~~~~~~~

## THE STATE, AT·THE RELATION OF TREDWAY, *vs.* LUSK.

1. Under the act of 1845, the failure of the general assembly to elect a public printer did not create a vacancy which the governor could fill by appointment, but the incumbent, who was authorized to hold the office until his successor should be elected and qualified, held over. (Scott J., dissenting.)

Information in the nature of *quo warranto.* The information stated that, in accordance with the provisions of an act entitled "an act to provide for electing a public printer," approved March 24th, 1845, John G. Tredway, the relator, was, by the governor, on the 9th day of May, 1853, appointed and commissioned public printer of the state of Missouri, and had given bond and qualified according to law; and that the respondent, James Lusk, usurped the office, and refused to deliver up the books and papers belonging thereto.

The respondent, in his answer, averred that, on the 4th day

22—VOL. XVIII.

of February, 1851, he was by the general assembly elected public printer for two years from the first day of May, 1851, and until his successor should be duly elected and qualified, and that he gave bond and qualified according to law; and that the general assembly which convened on the last Monday of December, 1852, failed to elect any person to succeed him in the office from and after the first day of May, 1853, whereby he became entitled to hold over.

To this, the relator demurred.

*H. A. Garland* and *J. W. Morrow*, for the relator. The term of office of public printer is fixed, and limited to two years. The words "and until his successor is duly elected and qualified," do not enlarge the *term*. At the end of two years, the term of the successor, if he has been elected, begins; if not, then there is a vacancy to be filled by the governor; but that public business might not suffer, the act provided that, in the mean time, the incumbent should continue to perform the duties of the office. This provision cannot be construed to create a new term. The same provision exists in relation to many other offices having a fixed term. The charter of the bank of the state of Missouri provides that the president and directors shall be elected by the general assembly, and hold for two years, *and until their successors are duly elected and qualified.* The practice has been for the governor to appoint, as if there was a vacancy, whenever the legislature has failed to elect. The words "elected" and "appointed" are interchanged and used synonymously in our constitution and laws. (See sec. 23, art. 4 of constitution.) But if the failure to elect created a new term for the incumbent, then we insist he was required to give a new bond, and having failed to do so within ten days, his office, by the third section of the act, became vacant. The securities in the original bond were not bound after the expiration of two years. *Lord Arlington* v. *Merrick*, 2 Sanders, 411. 4 Henn. & Munford, 208. 1 Leigh, 284. 2 Harr. Public policy requires that the people should have security for the faithful performance of the duties of public

officers, and the act contemplates that there shall be no public printer without a bond.

*Leonard* and *Gardenhire*, for the respondent. The term of office is not limited to two years. The act provides that the incumbent shall hold "for two years, *and until his successor shall be duly elected and qualified.*" The term cannot be for a shorter period than two years, but may for a longer. By the sixth section, the governor's power of appointment is expressly limited to a *vacancy*. The expiration of two years and the failure of the general assembly to elect, did not create a vacancy. How can it be said that there was a vacancy, when there was a person in the office authorized by law to perform its duties up to the moment when the appointment was made? The governor cannot make a vacancy for the sake of filling it. The words "and until his successor is duly elected and qualified," not only prevented a vacancy, but were introduced for that very purpose and no other. The policy of our laws is to prevent the occurrence of vacancies, and it is a wise policy. In 1847, an act was passed providing that all public officers in this state should continue in office until their successors were appointed and qualified. It is not claimed that the failure to elect creates a *new term*, but that the incumbent holds over by the tenure of the office, the term for which he was originally elected not having expired. Whether the securities in the bond of the respondent are bound or not, after the expiration of two years, depends upon the answer to the question whether the term of office is limited to two years. They are bound during the term, whatever it may be. The cases cited decide nothing more than this. If they did, they are not the law; and even if such was the law it only proves that our legislature has blundered, in providing that the incumbent might, in certain contingencies, continue in office for a longer period than his securities are bound.

GAMBLE, Judge, delivered the opinion of the court.

Lusk was elected public printer by the general assembly at the session of 1850, and at the session of 1852 there was a

failure to elect a successor by the general assembly. In May, 1853, the governor appointed and commissioned Tredway to fill the office. The present proceeding is for the purpose of removing Lusk from the office.

The act of 24th March, 1845, (R. C. 907,) in its first section, declares : " There is hereby established an office to be called the office of public printer." The second section directs that " a public printer shall be elected at the present session of the general assembly, and at every regular session thereafter, by joint vote of the two houses." The third section directs " that the president of the senate and speaker of the house of representatives shall furnish the person elected with a certificate of his election, and he shall, within ten days after receiving the same, give bond, take the oath of office, and shall, at the time provided in the act, enter upon the discharge of the duties of the office, and if he fail to do so, his office shall become vacant." The fifth section provides that " the public printer to be elected at each session of the general assembly, shall hold his office for two years commencing on the first day of May next thereafter, *and until his successor shall be elected and qualified ;* and the public printers thereafter elected, shall hold office for two years and *until their successors shall be elected and qualified.*" The sixth section provides that, " if the public printer should die, or resign, or if, from any other cause, the office should become vacant, the governor shall appoint a public printer, who shall give bond and qualify, and shall hold his office *for the same time that the printer in whose stead he shall be appointed would have held.*"

These provisions of the act are the only ones which materially affect the question in the present case. In behalf of the State, it is claimed that the office became vacant on the first of last May, in consequence of the failure of the assembly to elect a public printer, and as the office itself continued to exist, the governor, under the ninth section of the fourth article of the constitution, was entitled to fill it by appointment. That section is in these words : " When any office shall become vacant,

State *v.* Lusk.

the governor shall appoint a person to fill such vacancy, who shall continue in office until a successor be duly appointed and qualified according to law."

On the part of Lusk it is insisted that the governor had no authority to make an original appointment of public printer, because the thirty-second section of the third article of the constitution directs, that "the appointment of all officers, not otherwise directed by this constitution, shall be made in such manner as may be prescribed by law," and the law in the present case has prescribed an election by the general assembly as the mode of appointing a public printer. It is next insisted that, as the act itself directs, that the person elected by the assembly should hold the office for two years and until a successor should be elected and qualified, the office was not vacant, so as to authorize the governor to fill it by appointment.

It is evident, from this statement, that the only question in the case is, whether the office became vacant on the first day of May last, by reason of the failure to elect a public printer.

It is insisted for the State, that the term for which the office is to be held is two years, and that the additional time, "until a successor is elected and qualified," is added, merely to prevent the office being without some person qualified to discharge its duties, and does not prevent its being considered vacant for the purpose of its being filled by executive appointment.

There are many cases, both in the constitution and laws, in which the same words are used in prescribing the tenure of offices. The governor shall hold his office for four years, and until a successor be duly appointed and qualified. (Const. art. 4, sec. 3.) Sheriffs shall serve for two years, and until a successor be duly appointed and qualified. (Art. 4, sec. 23.) Constables and many other officers, whose offices are created and regulated by statute, hold them until successors are elected, or appointed and qualified, and by a general act passed 17th February, 1847, it was enacted that all public officers in this state shall continue in office until their successors shall be appointed and qualified. While it may be true, that the design of con-

tinuing an incumbent in office, until his successor is duly elected and qualified, is to prevent any interregnum in the office, and to have some person always authorized to discharge its duties, it is also true, that the incumbent, until the qualification of his successor, is as fully in the office, and entitled to all of its advantages and emoluments, as he was for the previous period of his service; and it is his right to hold the office until every thing has been done which is required by law to give title to the office to another person. The question, then, recurs, was the appointment of Tredway one which the governor, under the law and constitution, was entitled to make, and which being made, constituted him the successor of Lusk, so that Lusk's term of two years, and until his successor was elected and qualified, has been filled?

It cannot be doubted that Lusk was entitled to discharge the duties of the office not only until the first day of May, 1853, but that he would now be in office, competent to discharge its duties and entitled to its emoluments, if no appointment had been made by the governor; such would be the effect of the words prescribing the tenure, "until his successor shall be elected and qualified." If the office became vacant after the first day of May, it must have been so while there was a person in possession, capable of discharging its duties, and this vacancy must have been occasioned solely by the fact that no successor had been chosen by the general assembly. A case involving the same questions was before the Supreme Court of Pennsylvania, *Commonwealth* v. *Hanly*, 9 Barr's Rep. 513. Hanly was elected clerk of the Orphans' Court, and commissioned to hold his office for three years from the 19th December, 1845, *and until his successor shall be duly qualified*. In October, 1848, Brooks was elected to the office but died before he qualified. The relator, Broom, was appointed and commissioned by the governor, and gave bond, and was qualified according to law. The *quo warranto* was issued for the purpose of removing Hanly from the office. The tenure of the office, as prescribed by the constitution, was in these words: "They

State *v.* Lusk.

shall hold their offices for three years, if they shall so long behave themselves well, and *until their successors shall be duly qualified.*" Vacancies were thus provided for: "Vacancies in any of the said offices shall be filled by appointment to be made by the governor, to continue until the next general election, and until successors shall be elected and qualified as aforesaid." Hanly's three years had expired, and he was holding under the clause that gave him the office until his successor was duly qualified, and he was holding against a person who had been commissioned by the governor to fill a vacancy. The court, in speaking of the tenure of the office, says: "The constitution reads thus: they shall hold their offices for three years, if they so long behave themselves well, and until their successors shall be duly qualified. The obvious meaning of this clause is, that they cannot hold office for less than three years, if they so long behave themselves well, although, on the happening of certain contingencies, they may hold for a longer period. It is, therefore, of no consequence that, according to the respondent's construction, he holds office six instead of three years. Without intimating an opinion as to the term of his office, or that, if as the relator contends, it would be a great misfortune, we think there is nothing in the argument which can overrule the plain words of the constitution. That the respondent is entitled to hold until his successor is duly qualified, are the words of the constitution." "The fundamental error which lies at the root of the whole case of the relator, consists in the assumption that, according to the spirit of the constitution, the tenure of county offices is strictly limited as to time, viz: three years ; and that any extension of the time arises only from the exigency of the case, and must be strictly construed. The relator assumes that the respondent was elected and commissioned only for three years; but this is a mistaken view of the constitution, and is only plausible by obliterating several important words from the constitution."

The court then proceeds at some length to show that the office of the respondent, Hanly, was not vacated by the elec-

tion of Brooks, who died before he had given the bond and qualified, and then considers the question whether, under the constitution, a vacancy in the office had occurred which the governor was authorized to fill by appointment. Upon this point the court uses the following language : " It will be observed that the terms on which alone the governor can appoint, are a vacancy in the office, and that there can be a vacancy in an office when there is a person in possession whom all acknowledge to be rightfully in possession, having a perfect right to exercise all the powers and duties of the office, and to receive and enjoy all of its emoluments, is a position difficult to comprehend. It is an abuse of terms to say that, at the time the governor issued his commission to the relator, the office was vacant, for no person can plausibly deny that the respondent (Hanly) was the rightful possessor of the office at the time. The primary object of the framers of the amended constitution was, to diminish, as far as practicable, executive patronage ; and, in accordance with this policy, it was thought proper to confine the power of appointment to the single case of a vacancy in office. What then is meant by a vacancy in the office? Surely an office cannot be vacant, when it is filled by a person in the legitimate exercise of all its functions—in the lawful enjoyment of all its emoluments."

The office of public printer is a statutory office, which the assembly could mould and fashion as they thought best. The power of original appointment is vested in the two houses, and the governor has not, by the law, any power given him, except to fill vacancies, by the appointment of persons who shall hold the office for the same time it would have been held by those in whose stead they are appointed. His appointments are in the stead of other persons who have been regularly elected. The person elected by the two houses is to hold his office until a successor has been elected and qualified. That the governor has no power to displace the person elected by the general assembly, is certain, for no such power is hinted at in the law. He cannot displace him during the two years, because the office

State *v.* Lusk.

has been conferred upon him for that time absolutely, and the governor has no control over the office. He cannot remove him after the two years, because the same law that protects him for two years, protects him equally after that period, against every person but a regularly elected and qualified successor. The successor, to whose claims he must yield, is a successor elected under the law, and qualified as the law requires. The law makes it the duty of the two houses to elect a successor, and it makes no provision for the appointment of a successor in any other mode, or by any other body or individual, and it continues the incumbent in office until his successor is elected and qualified under that law. If the two houses, instead of electing a successor by the joint vote of the two houses, had made an election by the concurrent vote of the two houses, each house voting separately, the election would have been contrary to law, and if that fact had appeared in the title of the party claiming the office against the incumbent, there would have appeared a failure to elect a successor, and the incumbent would have continued in office, under his former election. The law providing for the choice of a successor in its own mode, excludes others, and it continues the incumbent in office until that mode is pursued.

It may be taken to be the clear intent of the act, that the public printer shall be the appointee of the assembly, except in those cases of necessity arising after a person has been legally in office, where it becomes vacant by death or resignation, or like casualty, in which cases the governor is authorized to fill the vacancy. Under the express terms of the act, then, the respondent, Lusk, was in office when the governor issued the commission to Tredway, and he was in under an election by the joint vote of the two houses of the assembly. The act intended to continue him in office until a successor was elected by the body having the power to appoint such successor; and the failure of that body to make the appointment at the time when, by law, it should have been made, did not vacate his office.

It has been argued that the securities of Lusk are not bound

upon the bond given at the time he was elected, for any default of which he may be guilty after the expiration of the two years. It is not necessary to consider this question in the present case, for, whether they are bound or not, does not aid in determining whether his successor has been so appointed, under the law, as to terminate his right to the office. The authorities, however, which have been cited upon this question, appear rather to sustain the position that he continues in office; for, if the courts had entertained the opinion that the officers whose securities were sued, were out of office at the expiration of the term of office specified, there would appear to be no difficulty or hesitation in declaring that the securities were not liable for defaults after the official powers of the principal had ceased.

Reference has been made in the argument to other offices, in which the incumbents are to hold for a given period, and until their successors are appointed and qualified; such as the governor, sheriffs, &c., but it would unnecessarily extend this opinion to examine the provisions of the constitution and laws applicable to those offices, and it is not thought that, in relation to either of the different offices referred to, is there any provision inconsistent with the views here expressed.

Regarding the respondent, Lusk, as in office under the statute, and that there was no vacancy which the governor was authorized to fill by appointing Tredway, the demurrer of the State to the plea of Lusk ought, in my opinion, to be overruled, and judgment should be given thereon for the respondent, Lusk.

Judge RYLAND concurred in the above opinion.

SCOTT, Judge, dissenting. During the session of the general assembly, held in the winter of 1850 and '51, in pursuance to the terms of an act entitled " an act to provide for electing a public printer," approved March 24th, 1845, James Lusk was elected public printer for the term of two years, to commence on the first day of May, 1851. Lusk qualified and entered upon the discharge of the duties of the office, and con-

tinued to discharge them until the 9th day of May, 1853, when the governor appointed Tredway, the relator, the last general assembly having failed to elect a public printer, as required by law, and Lusk having served the two years for which he was elected. Tredway having qualified, under his appointment, claimed to exercise the duties of public printer; Lusk refused to yield to his claim, and the question is now submitted, which of these parties, under our constitution and laws, is entitled to the office? I say constitution, because an attempt will be made hereafter to show the influence that should be exerted by that instrument in determining this question, however carefully its provisions have been kept from view by those maintaining the right of Lusk to the office.

In the examination of this question, I will first turn my attention to the law creating the office of public printer, and from its terms alone, uninfluenced by the constitution, endeavor to ascertain how far the governor was warranted in making the appointment of Tredway. The second section of that act, which was passed during the session of 1844–5, prescribes that a public printer shall be elected at the present session of the general assembly, and at every regular session thereafter, by joint vote of the two houses. The third section provides that, within ten days after the delivery of the certificate of his election to the printer elect, he shall give bond and security, and take the oath of office, and that if he fail to do so, his office shall become vacant. The fourth section enacts, that the bond shall be given to the state of Missouri in the penalty of $10,000, and be subscribed by five securities. The fifth section prescribes that the printer to be elected at each session of the general assembly, shall hold his office for two years, commencing on the first of May next thereafter, and until his successor shall be elected and qualified, and that the public printers thereafter elected shall hold office for two years and until their successors shall be elected and qualified. The sixth section enacts that, if the public printer should die or resign, or if, from any other cause, the office should become vacant, the gov-

ernor shall appoint a public printer, who shall give bond and qualify, and shall hold his office for the same time that the printer in whose stead he shall be appointed would have held.

It is conceded, that the general assembly, when the constitution does not forbid, can create offices and prescribe how they may be filled. They may take the appointing power from the governor, and the power of filling vacancies in such cases may be conferred on others than the executive. In the exercise of the power to create offices, they may declare when they are vacant, and who shall fill the vacancies. But it is maintained that, when there is a vacancy in a permanent office, and the law creating that office does not prescribe a mode by which it may be filled, then the duty of filling that vacancy devolves on the governor by the ninth section of the fourth article of the constitution, which ordains that, when any office shall become vacant, the governor shall appoint a person to fill such vacancy. The enactment of this provision into a law, cannot restrain the constitutional power vested in the governor. By the constitution, the governor would have had a right to fill a vacancy in the office of public printer, it not being otherwise provided for. The enactment of so much of that section as affects to confer the power to fill a vacancy is nugatory. The power exists under the constitution without any statutory delegation of it. The only question is, whether there was any vacancy in the office within the meaning of the law, for I have said that, as to offices unaffected by the constitution, the mere creatures of statutes, the general assembly may declare when they are vacant and what is a vacancy in them. If it can be shown that the law itself contemplated that there might be a vacancy in the office of public printer, when there was an incumbent, duly qualified, actually discharging its duties, I trust we shall hear no more about the absurdity of maintaining that an office may be supplied with an incumbent qualified to discharge its duties, and yet be vacant in the eye of the law.

The third section of the act declares that, if the person elected public printer shall not qualify within ten days from the

State *v.* Lusk.

time of receiving his certificate of election, his office shall become vacant. Suppose one is elected by the general assembly to supersede an incumbent, and the person elected fails to qualify within ten days, his office then becomes vacant. But the vacating his office does not vacate the office of the incumbent. He holds until his successor is elected and qualified. The general assembly fails to elect, not knowing of the failure to qualify, or for the reason that it adjourned so soon after the election, that the ten days allowed the printer elect to qualify had not elapsed, or before qualification he had died. In the case supposed, there is a printer in office who has been superseded, so far as the election of another would affect it, who has been rejected by the general assembly and another elected in his place. Under such circumstances, would any one maintain that the incumbent would hold over for two years or another full term? Would not every one say, that there was a vacancy, which it was the bounden duty of the executive to fill. Can any one read the statute and say that such was not the intent of the law-maker? What was the object in declaring the office of the printer elect vacant in such cases, but that the appointing power might interpose and fill it, the general assembly, if it was in session, the governor, if it was not? If, in such case, the governor appointed, there would be, at the time of making the appointment or filling the vacancy, an incumbent in the office, fully qualified to discharge its duties. If this is not so, then, if a public printer should be elected his own successor, he may fail to qualify, and if the general assembly, should it be in session, and should fail to make another election, he would hold over for the whole term, utterly refusing to qualify or give bond, in plain violation of the express terms of the statute. Can we believe the law ever contemplated such a state of things? It cannot be said that the case cannot happen, as we are now considering one which arises from a failure of the general assembly to elect a printer, and it is a matter of history, that there was an omission to elect many other officers.

If I am right in what has been said, then, if there is an absurdity in maintaining that an office may be vacant, whilst it has an incumbent duly qualified to discharge its duties, that absurdity is a creature of the law, and derives its existence from the statute book. It will not be contended, that the legislature cannot give words a signification variant from their literal import. Such instances are common, owing to the imperfection of language.

If, then, in the contemplation of this law, there may be a vacancy in the office, whilst it is actually filled, and if a failure to qualify creates a vacancy, let us next inquire what difference in principle there is, between a failure to qualify and an omission to make an election. If the law intends that a failure to qualify, from whatever cause it may proceed, shall create a vacancy, on what ground can it be maintained, that a failure to make an election is not also a vacancy within the meaning of the law. Now, if there can be a vacancy in the contemplation of this law, when an election has failed to effect its end, when it has proved unavailing, where is the principle which forbids us from holding that the omission to make an election at all, is also a vacancy? What is the difference between no election and an election which effects nothing? If a vacancy is caused by the one, why not by the other? Does not every consideration of policy which requires such a construction in the one case equally require it in the other? The great principle which pervades our system of government is limited terms of office, and one motive to this is, that in offices requiring the security of official bonds, those bonds may, at stated periods, be renewed. The law considers that a bond, with an ascertained penalty, is sufficient to secure the faithful discharge of official duties for only a specified time. Should not that statute be unequivocal in its terms, that should drive the courts to the conclusion that the penalty, intended to cover one term of office, should be made to cover two, three or four of those terms? When men go into bond for two years as sureties, they do not imagine that our laws are so defective as that

the tenure of the office and their liability may be continued in-
definitely.   But in addition to this consideration, we all know
that the migratory habits of our people, render the frequent
renewal of official bonds indispensably necessary for the pub-
lic security.   Look at bonds which have been executed any
length of time with a number of sureties, and how many of
them do we find that are scattered in the different states and
territories of this Union ?   As to the question which was so
ably argued respecting the liability of the securities after the
expiration of the term for which they were bound, I do not feel
that I am required to enter upon it for the purposes of this ar-
gument.   I will not forestall the judgment in that case.   The
argument for the sureties will be much stronger and more effec-
tual, when made by themselves, in an action against them on
their bond.   But the very existence of a doubt in relation to
this matter, should cause a court to be well satisfied, before it
adopts a construction which may deprive the state of the se-
curity which she requires of public officers.

The following are some of the rules observed in the construc-
tion of statutes : Whenever the intention of the makers of a
statute can be discovered, it ought to be followed, with reason
and discretion in its construction, although such construction
seems contrary to the letter of it.   A thing which is within the
intention of the makers of a statute, is as much within the
statute as if it were within the letter.   A thing which is within
the letter of a statute is not within the statute, unless it be
within the intention of the makers.   In order to form a right
judgment whether a case be within the equity of a statute, it is
a good way to suppose the law-maker present, and that you
have asked him this question : Did you intend to comprehend
this case ?   Then you must give yourself such an answer as
you imagine he, being an upright and reasonable man, would
have given.   If this be that he meant to comprehend it, you
may safely hold the case to be within the equity of the statute ;
for while you do no more than he would have done, you do not
act contrary to the statute, but in conformity thereto.   Apply

these rules to the case under consideration. The statute contemplates a vacancy in the office, although there is an incumbent in it, for the reason that there has been a failure to qualify after an election. If there is a vacancy for this cause, the same reasons which induced the legislature to make a vacancy for failing to qualify, would operate to make them intend a vacancy when there was no election. Put it to any legislator, he being an honest and upright man, whether, if there was a vacancy in the one case, there should not be in the other ? He would say, the vacancy was intended in the case of a failure to qualify, because the term would be ended for which the incumbent was elected ; because it was contemplated that every two years there should be a bond given, in the penalty of $10,000, which penalty was deemed sufficient only to cover that length of time ; and because it would be unjust that the sureties should be held for a longer period than they expected when they entered into the bond. Now as the same reasons which operated to create a vacancy in that case, operate here, a vacancy must exist in the case of a failure to elect.

The construction for which I contend is best for the interests of the state, it is consistent with the intention of the legislature, and is calculated to secure the just accountability of public officers. The opposite construction has no support in reason, can only be maintained by an adherence to the letter of the law. It is a rule that, if the literal expressions of the law would lead to inconvenient consequences, such a construction should be given as to avoid such consequences, if, from the whole purview of the law and giving effect to the words used, it may fairly be done. It will be shown in the sequel, that my construction of the act gives effect to the words, " *and until his successor shall be elected and qualified.*" The construction put upon this statute, must be the rule in all future cases, under similar circumstances. It must be attended with important consequences, as now, by law, all officers hold until their successors are appointed and qualified, and it is no answer to say that, if any inconvenience arises therefrom, the legislature

can obviate it. The principle will affect the interpretation of our constitution, which is beyond the reach of legislative action.

In the consideration of this question, it should be borne in mind that, in order that there might be always some one who could fill vacancies in office, the constitution has given the governor, who is an officer authorized to act always and at any time during his continuance in office, power to fill all vacancies; whilst the general assembly acts only at intervals, and is unorganized the greater portion of its time. The legislature, in the act under consideration, so far as it could, has conferred on the governor the power to fill vacancies in the office of public printer, arising from death, resignation or any other cause. This is not a strife as to who shall exercise the power; it is not whether the executive, the legislature or the people should fill vacancies, as the power of the governor to fill them is unquestionable; but the dispute is, whether a vacancy has occurred; whether a *state of facts* existed which authorized the exercise of a power by the governor with which he was, beyond all question, vested. If he cannot, then under the law as it stands, the evil can never be remedied but by the joint vote of the two houses, although the omission of those houses to do their duty, has given rise to this controversy. If this is so, then surely it must be admitted that the state of Missouri is in a strange state with regard to the office of public printer, with the only consolation that the mischief can be corrected by those who have refused to prevent it. Thus we are made to have an officer who was only elected for two years, and until his successor was qualified, and the penalty of whose bond was deemed by law only sufficient for two years, to continue in office the two years for which he was elected, and an indefinite length of time afterwards, without any additional security.

It will be necessary to state the view I entertain, as to the meaning of those words in the statute, "*and until his successor shall be elected and qualified,*" and to mention, as I conceive, the object and design of introducing them into the law

23—VOL. XVIII.

under consideration. The same phrase occurs in the constitution, in relation to some important offices; and if it can be shown that, by the constitution of the state, there may be the *absurdity* of an office being vacant while it is filled with an incumbent lawfully qualified to discharge its duties, the views which I have advanced will receive some support from that instrument. Life estates in offices are all now abolished in Missouri. Offices can only now be holden for stated periods. In most of the ministerial offices it was foreseen, that bonds, with security, would be required as a guaranty for the faithful discharge of the duties imposed by law. The appropriate time for executing such a bond would be at the beginning of the term of the office. A little foresight satisfied the framers of the constitution that, in all cases, one officer could not be immediately prepared to succeed another on the expiration of his term. A thousand casualties would prevent it. It was important that there should be always some one in the offices to perform their duties, otherwise public and private interests might receive great prejudice. The time which would elapse from the expiration of the term of an office until a successor could be qualified, could not well be limited. Sometimes it would be greater or less. Had a fixed time been prescribed, it must have been for the longest period that would have been reasonably required, and thus it would have been extended to cases that did not require it. The public interest, however, demanded that offices should be filled without intermission. Under these circumstances, the provision was introduced in the constitution, that an incumbent should hold his office for the term for which he was appointed, and until his successor was elected and qualified. These words, then, were designed for this exigency; to enable the incumbent to hold over merely until his successor was qualified, not to alter or lengthen the specified term, so as to prevent the office from being considered as expired or vacant for the purpose of putting another incumbent into it. Why should there be such particularity in limiting the term of offices, if it was intended that all should be rendered

uncertain again by the introduction of the phrase, "until his successor shall be elected and qualified." If it was designed that the term of an office should be until a successor was qualified, why not have omitted every thing relative to the precise length of it, and declared that, on a given day, and on the same day, every two or four years thereafter, an election should be held for an officer, who should continue in office until his successor was elected and qualified. The opposite construction takes away all meaning from the clause fixing the term of the office.

The third section of the fourth article of the constitution ordains that the governor shall hold his office for four years, and until a successor be duly appointed and qualified. The sixteenth section of the same article declares, that when the office of governor shall become vacant by death, resignation, absence from the state, removal from office, *refusal to qualify*, impeachment or otherwise, the lieutenant governor shall discharge the duties of the office. The seventeenth section of the same article prescribes, that, whenever the office of governor shall become vacant by death, resignation, removal from office or otherwise, the lieutenant governor shall, as soon as may be, cause an election to be held to fill such vacancy. In these two sections, the word "vacant" has precisely the same signification, or rather it covers the same casualties creating a vacancy, in the last as in the preceding section, as, it is obvious, that the vacancy referred to in the seventeenth section, is that to which reference is had in the sixteenth section. The only facts specified in the seventeenth section, as causing a vacancy, are death, resignation, removal from office. The facts specied in the sixteenth section are death, resignation, absence from the state, removal from office, refusal to qualify, impeachment. Notwithstanding the facts specified in the sixteenth section are more numerous than those enumerated in the following one, yet the term "vacant" has as comprehensive a signification in the one section as in the other. If this is so, then, by the words of the constitution, a refusal to qualify makes a vacancy in an

office. Then there may be a vacancy created by a refusal to qualify, although there is an incumbent in the office, duly competent to discharge its duties. Now suppose a successor is elected to a governor in office; by the constitution, the incumbent is to hold until his successor is appointed and qualified. Now if the governor elect should die before he qualifies, will not this create a vacancy which the constitution contemplates should be filled? This case is not within the letter or words of the constitution, yet no one would say, that it was not within the meaning of that instrument. If, in construing the word "*vacant*" in the constitution, we are driven to comprehend cases not enumerated in it, and which contemplate that the office is full, what rule restrains us from pursuing a similar course in interpreting similar words in a statute. Should not statutes be construed in reference to the constitution of the state? If statutes in *pari materia* are to be construed in reference to each other, a stronger reason exists that they should be construed in reference to the constitution.

Take the office of sheriff. The constitution ordains that the sheriff shall serve for two years, and until a successor be duly appointed and qualified; that when vacancies happen in the office, they shall be filled by appointment of the governor. It will not be pretended, that the legislature can make any other act or omission a vacancy in an office, than that which was contemplated by the constitution. If the constitution prescribes what shall be a vacancy, the legislature cannot give the word a signification variant from that intended by the constitution. Now the act concerning the office of sheriff declares, that unless he gives bond within fifteen days after the receipt of the certificate of his election or appointment, the office shall be deemed vacant. Here, then, is a legislative interpretation of the constitution, that a failure to qualify within a given time creates a vacancy in an office, although one is in it, discharging the duties under the clause in the constitution which authorizes a holding until a successor is duly elected and qualified. Thus, then, the constitution itself shows that there may be a vacancy

State *v.* Lusk.

in an office whilst there is an incumbent actually discharging its duties, and the legislature has declared the same thing, and has sanctioned this construction by its own enactment. Now if, in the opinion of the framers of the constitution, in the opinion of the general assembly, there may be a vacancy in an office whilst one is discharging its duties under the clause in his appointment, " *and until his successor shall be elected and qualified,*" what should restrain a court from giving the same interpretation to the word, when every reason is in favor of such construction, and not a single well founded one exists against it? The only reason that can be given is, that *ita lex scripta est,* and in this case the answer to that argument is, *qui haeret in litera, haeret in cortice.* He who sticks to the letter, sticks to the bark, and never gets into the substance of things. Are we to have a new rule for construing statutes? Is their interpretation to be no longer a matter of understanding? Shall the inquiry be no longer, what is the sense of the law, but what is its letter? And if the letter does not suit the case, shall the party be dismissed, with the consolation, that it was the fault of the legislature that they did not word the law differently?

The bank charter provides, that the directors shall hold their offices for two years, and until their successors are elected and qualified; that if any vacancy exists in the office when the general assembly is not in session, it shall be supplied by the governor. The last general assembly elected six directors, the number to which the branch bank at Fayette was entitled. Three of that number qualified, and the rest refused to serve. The general assembly failed to elect others. Now do the old directors hold over, or must the governor fill the vacancies? If the old directors hold over, which three of the six shall do it, for three of them have been superseded? Which three? Which three shall hold over? Here are but three offices and six officers, how shall they be distributed among them? The former directors hold over until their successors are elected and qualified. There is no vacancy, according to the argument. The

governor cannot fill it, for it is not empty, and if he has, the appointees are guilty of usurpation of office in discharging its duties, and are at any moment subject to arrest for the offence. If these things are so, then the bank at Fayette must be shut up for the want of directors, for there is no power under the constitution and laws, according to the argument, by which the neglect of the general assembly can be obviated. The two houses will not appoint officers; the court says the governor cannot appoint them, and so between the two, the government of of the bank falls to the ground.

The act of the 16th February, 1847, declares, that all officers appointed by the authority of the laws of this state, shall hold their offices until their successors are appointed, commissioned and qualified. The law creating land offices in this state enacts, that the registers and receivers shall hold their offices for two years. Of course they now hold over until their successors are elected and qualified. Those officers are required to be elected by the general assembly. The registers give bond in the penalty of five thousand dollars, and the receivers in the penalty of twenty thousand dollars. The general assembly, at its last session, failed to elect any land officers. Should it be held that there can be no vacancy whilst the office has some one to discharge its duties, although he is only holding until that some one can be appointed, what will be the consequence? These officers hold over without renewing their bonds. Whether, under such circumstances, their sureties are bound, is made a question. The penalty is clearly made to cover double the time designed by law, if there should be no vacancy declared. If the thought should steal into the minds of those officers that their sureties are not bound, or could they be persuaded that there was a doubt about it, what an influence may it exert on their conduct? I cast no imputation on those officers. My remark is general, intended for poor fallen man, who is instructed to pray for a deliverance from temptations. Most of those offices are where lands are now valuable and much sought after. Must it not be a matter of concern to the state, that

State *v.* Lusk.

there should exist any doubt in relation to the duty of the executive under such circumstances? And yet why stay his power of appointment—why hold his hands? What good is promoted? What object is obtained? If the general assembly wilfully fails to do its duty, should not the state have some officer who will remedy the evil of their neglect? The constitution has declared that the governor shall fill all offices when they become vacant, and in the name of reason, why should not the failure of the general assembly to elect, be held to create a vacancy? Is not the term expired for which the bond was supposed to be given? Did the securities expect to be bound for two terms, when they only entered into bond for one? Does it follow, that if a bond is good now, it will be good four years hereafter? The sureties may have gone away; they may have become insolvent; they may believe they are not bound for a longer time than one term, and may omit to take any steps under the statute concerning securities, for their relief.

The curators of the State University hold their offices for a limited term, and until their successors are elected and qualified. They are required to be elected by the general assembly. The last general assembly failed to elect any curators. They have since been appointed by the executive. Are his appointees liable to indictment for usurpation of office?

It seems strange to me that the case of the *Commonwealth of Pennsylvania* v. *Hanley*, (9 Penn. 513,) should have been introduced into this controversy, and that too, as an authority. The syllabus of that case is this: The death of the person elected to fill the office of clerk of the Orphans' Court, before he has qualified himself according to law, does not create a vacancy, but the incumbent who is authorized to hold the office until his successor shall be qualified, holds over. The office in the case was an elective one. The incumbent who held over, had been elected by the people. The claimant of the office was appointed by the governor. So it was a strife whether the people's incumbent or the governor's appointee should prevail. The case is put upon the ground, that the primary object of the

framers of the amended constitution, was to diminish, as far as practicable, executive patronage; and there was also something said about the absurdity of an office. being vacant when it was full. We all know, that opinions are only addressed to, and prepared for the people of the state in which the opinions are given. Hence it happens, that there are frequently considerations operative in the formation of an opinion which are omitted to be stated by the judge, because he knows they are familiar to all those for whom his opinion was intended. Not so with those who live beyond the state, and who have no accurate acquaintance with its constitution and laws. This reflection will restrain me from any remarks on this opinion. But it is strange that it should be brought into the courts of Missouri to influence the construction of her constitution and laws, when the opinion on its face professes to be influenced by an object which has nothing at all to do with this controversy. The strife in Pennsylvania was between the people and the governor; whether an office filled by the people should ever be filled by the governor, so long as the incumbent elected by the people should continue in it. Here the question is, whether an office shall be filled, which the power authorized to fill it has has failed to do, and that power is not the people. Admit that our policy is to restrain executive patronage, is it in accordance with that policy to take it from the executive and give it to the general assembly, and that too, when we see that body wilfully failing to discharge the duty claimed for it. Our policy is as hostile to legislative as to executive patronage. Experience has shown that appointments made by the executive will favorably compare with those made by the general assembly. Indeed, the sense of our people is with the former mode of appointment. Now, as to the absurdity of the thing, I will ask any candid mind to take our constitution and its amendments, and apply the principle above extracted from the case of Hanley to the office of governor; to that of sheriff; to that of judge of the supreme court, and to what consequences will it lead? I will not use the term absurd, but I will say that

it will produce this consequence, that the people may vote a man out of office by the election of another, and yet, the person voted out, for whatever cause, however justifiable, may yet hold the office for another full term, if the person elected to succeed him dies before he qualifies. Now, I believe there is that spirit in the people of Missouri that, if they believed there was any such principle engrafted on their constitution, they would demand its repeal, and never rest contented until their demand was satisfied.

Under the circumstances, it is not important that the objections to Tredway's qualification should be answered. Nor do I deem it necessary to answer the argument raised on the word "elected," used in the act concerning the public printer. The constitution answers it very satisfactorily.

