McIlvaine, C. J.
This information is prosecuted to oust the defendant from the office of acting commissioner of the-reform school for boys, which office, it is alleged, he has usurped, intruded into, and unlawfully holds.
It is admitted that, on the 16th day of April, 1872, the-defendant, being duly appointed and qualified, entered upon the duties of this office for a term of three years.
The reform school for boys is one of the public institutions of the state, and was established by an act of the general assembly. The government of the institution is confided to a board of commissioners, consisting of three members,, one of whom is denominated acting commissioner. The- *593 mode of their appointment and their terms of office are prescribed by section 6 of the act of April 2, 1858, entitled “ an act to provide for the establishment and government of reform schools,” as amended on the 27th of March, 1866 (S. & 8. 723). This section as amended, provides : “ The board of commissioners shall continue to consist of those members now appointed for the period of their appointment, and their powers and duties shall be as designated in this act. Their successors shall be appointed by the governor, by and with the advice of the senate, one of their number being designated by the appointing power aforesaid, acting commissioner, and all of them, to hold their offices for three years from the day of their appointment, and-until their successors are appointed and qualified, unless vacancies occur from death, resignation, or removal for cause as herein provided.” The defendant, claims to hold the office by virtue of an appointment made in pursuance of this statute, by the governor by and with the advice of the senate, on the 16th of April, 1872. It is not claimed by the relator that a successor to the defendant has been appointed by the governor with the advice of the senate, or that a vacancy has occurred by reason of any of the causes above named. It does appear, however, that on the 9th day of April, 1875, without the advice or consent of the senate (the general assembly not being then in session), the governor appointed, or assumed to appoint, one Joseph C. Harper, as the successor of the defendant, and for the term of three years from the 16th day of April, 1875, who took an oath of office, and gave bond as required by the statute.
The appointment of Harper thus made, though not in strict conformity to the provision of section 7 of the act. of 1858, above named, in relation to the mode of filling vacancies, is sought to be sustained under it. This section, among other things, provides that “ vacancies in it (the board of commissioners) shall be filled as the original appointments are made, except when the general assembly *594 is not in session, and then by the governor, until the 20th day of the next session of the general assembly.”
Taking these sections together, the power of appointment is prescribed as follows: Successors to incumbents must be appointed by the governor, by and with the advice of the senate, and in no other way. And appointments to fill vacancies must be made in the same way, except, only when the general assembly is not in session, the governor alone may make temporary appointments; thus plainly distinguishing between successors and appointees to fill vacancies.
The decision of this case also involves the consideration of sections 2 and 3 of article 7 of the constitution. Section 2 provides that “the trustees of the benevolent and other state institutions, now elected by the general assembly, and of such other state institutions as may be hereafter created, shall be appointed by the gov-nor, by and with the advice and consent of the senate; and upon all nominations made by the governor, the question shall be taken by yeas and nays, and entered upon the journal of the senate.” It is assumed that the commissioners of the reform school for boys fall within the provisions of this section. Section 3 provides, that “the governor shall have power to fill all vacancies that may occur i n the offices aforesaid, until the next session of the general assembly, and until a successor to his appointee shall be confirmed and qualified.”
Upon the foregoing statement of facts and written law, ■we think that the right of the defendant to hold the office would be indisputable, if the governor had not assumed to ¡appoint his successor. It is manifestly the design of the ■constitution, as well as of the statute, to secure to such ■office, an incumbent who possesses the confidence and approval not only of the governor, but also of the senate of the state. The only exception provided for is one of necessity, to wit: An appointee to fill a vacancy, when the advice and consent of' the senate is not attainable. The only question in the case, therefore, is, was there a vacancy in ¡the office of acting commissioner at the time Harper’s ap *595 pointment was made ? If not, his appointment was unauthorized, and the defendant is lawfully entitled to hold the office.
It is hardly necessary to deny, as no one contends, that a vacancy was created in the office by the mere appointment of a successor to the defendant. And it is almost as palpable, that if a successor had not been appointed, the defendant would have continued to hold, not merely as a defacto officer but as an officer dejure. This must be so, if effect be given to the provision of the statute authorizing him to hold over his three years, until a successor shall be appointed and qualified. The successor here meant can not be the appointee of the governor alone, who comes into the office temporarily to fill a vacancy, but the appointee of the governor by and with the advice of the senate. "Were it otherwise, it would be necessary to hold that a vacancy was created by an appointment to fill the vacancy, or that, in contemplation of law, an office is to be regarded as vacant while in the possession of an officer who is rightfully and lawfully entitled to hold it.
Much stress is laid by the relator on the significance of the word term — a word not used in the statute, however; and the claim is that the office became vacant on the 16th of April, 1875, by reason of the expiration of the defendant’s term of office. Let it be conceded that the defendant’s term was limited to three years, from April 16,1872; it is nevertheless true that the same statute which imposed the limitation also provided that the right of the defendant to hold the office should continue thereafter until his successor was appointed and qualified. Qui hceret in litera, hceret in cortice.
The plain and obvious import of the language of this statute is, that a vacancy shall not occur at the end of three years from the incumbent’s appointment. It is true, a successor may be appointed by the governor, by and with the advice of the senate, either before or after the expiration of the three years; and when so appointed and qualified, the right of the incumbent to hold the office ceases whenever *596 the three years from the date of his own appointment have elapsed. In such case, there is no interregnum or vacancy in the office. It passes in succession. The end of one tenure, and the beginning of the next, occur at the same instant. But if no successor be qualified, the old incumbent continues in office, not as a mere defacto officer or locum tenens, but as its rightful and lawful possessor until such successor be duly appointed and qualified.
That the framers of the constitution, in providing for filling vacancies in office, did not regard an office as vacant, when an incumbent might lawfully hold over his definite term until a successor was elected or appointed and qualified, is manifest from other provisions in the instrument. By section 4 of article 10, the duration of the term of township officers is fixed at one year from, the Monday next succeeding their election, and until their successors are qualified. It would hardly be contended that, under this provision, a township office becomes vacant at the end of the year, from the mere fact that no successor to the incumbent has qualified.’ Again, the following provisions are found in the schedule: Section 7 provided that all county and township officers and justices of the peace in office on the 1st of September, 1851 (when the constitution took effect), should continue in office until their terms expired respectively. Section 8 provided for the filling of vacancies which might occur after that date, and until officers were elected or appointed and qualified under the constitution. And section 10 provided that all officers should continue in office until their successors should be chosen and qualified. Under these provisions in the schedule, it can not be doubted that all officers in office on the day named continued in office, de jure, until their successors were chosen under the new constitution, unless removed by death or otherwise, although their fixed and definite terms expired before their successors were chosen; or, in other words, by virtue of section 10, the expiration of terms did not create vacancies to be filled under the provisions of section 8.
Section 20 of article 2 of the constitution provides, “ The *597 general assembly, in eases not provided in this constitution, shall fix the terms of office and the compensation of all officers; but no change therein shall affect the salary of any officer during his existing term, unless the office be abolishedand it is contended by the relator, that, having fixed a certain period as the duration of the term, the general assembly had no power to extend the tenure of an incumbent beyond that period, so as to prevent a vacancy. The office in question was not provided for in the constitution, and, unquestionably, it was the duty of the legislature to fix its term. And if, by implication, there was no power to extend an incumbent’s tenure beyond the fixed period, under any circumstances, then it must be conceded that the defendant is not in office de jure, and ought to be ousted, and that, too, without regard to the fact whether or not an appointment has been made to fill the vacancy.
Does this section of the constitution so limit the power of the general assembly as to nullify the jorovision of the statute extending the tenures of the officers until successors are appointed and qualified ? To deprive the governor of the power to fill vacancies, as conferred upon him by the constitution, is one thing which the legislature can not do. To legislate so as to guard against and prevent the occurrence of vacancies is quite another thing, which may or may not be done. In cases where the duration of the tenure of office is limited by the constitution, of course its duration can not be extended by statute; but where the subject is left to the judgment and discretion of the general assembly, without any limitation as to the length of the term or tenure, there is no inhibition expressed in, and, we think, none implied from, the form of this section against an extension by statute of the right to hold beyond the term fixed, until a successor is duly qualified.
Nor is it necessary, in order to maintain this construction, that the time inteiwening between the expiration of the period fixed by the statute and the qualification of a successor, should be considered as a part of the preceding term of office. Let it he conceded that the term must be fixed *598 to a certain and definite period, so that the expiration of the period closes the term of an incumbent, and brings in the term of a successor, if one be duly appointed and qualified. In such case there would be no vacancy in the office, and the successor must be a person appointed by the governor, by and with the advice of the senate. But it is claimed, if a successor be not appointed by the governor and senate, at the expiration of the incumbent’s term, a vacancy then occurs. Undoubtedly, this would be so, if the incumbent may not lawfully hold over pro tempore. But the right to so hold over is given by this statute, as we have shown, if it be competent for the legislature to confer it.
The authority of the general assembly to fix the terms of office and the compensation of-all officers, not provided for in the constitution, is found in the general grant of legislative power, and not in section 20 of article 2, of the constitution. This section simply imposes upon that body the duty of exercising the power so granted, and forbids any change in the salary of an officer during his existing term so fixed, unless the office be abolished. If section 20 had been omitted, there is no doubt the general assembly, under the general grant of legislative power, might have fixed the term of an officer to a certain and definite period, and at the same time conferred upon the incumbent for a term the right to hold over temporarily until a successor should be duly qualified; and by inserting this section, and thereby imposing upon the general assembly the duty of fixing the terms of office not otherwise provided for, there is no implied restraint upon the power to authorize an incumbent to hold over his term until a successor may be duly appointed and qualified.
We.are aware that the executive department of the state government has, on divers occasions since the adoption of the present constitution, assumed to fill vacancies in office by appointment, when, according to the foregoing views, vacancies did not exist. And, on the other hand, the legislative department has adhered to a different construction of its constitutional powers, in providing against the occur *599 rence of vacancies in numerous offices, by authorizing incumbents to hold over the fixed terms, until successors should be chosen and qualified. This court is now called upon, for the first time, to declare the true limit of powers in this regard as between these co-ordinate branches of the government. After a careful examination of the question, in the light of both principle and authority, we are led to the conclusion that the genera] assembly may provide against the occurrence of vacancies by authorizing incumbents to hold over their terms in cases where the duration of their tenures is not fixed and limited by the constitution.
By this solution, public trusts and offices are preserved to the administration of those agents who may be chosen in conformity to the general policy of the state, as declared by its constitution and laws providing for their election or appointment; and, at the same time, all the evils contemplated as likely to .result from vacancies in office are guarded against by confining the exercise of the power to fill vacancies in office to those cases where no one is authorized by law to discharge the public duties; which, we think, is the constitutional scope of that power.
All the. authorities which have been brought to our notice favor the conclusions to which we have arrived.
It is true, a contrary doctrine was held in the People v. Reid, 6 Cal. 289, but that case has ceased to be authority, having been overruled in several subsequent cases in the same state. Of the later cases, we will notice only one, The People v. Tilton, 37 Cal. 614. By section 8, article 5 of the constitution of California, the governor of the state was authorized to fill vacancies in office. The office in dispute was a harbor commissioner, created by an act of tlie legislature, which provided that each commissioner should hold his office for the term of four years, and until his successor was elected, etc. There was a failure to elect a successor to the incumbent. A majority of the court, overruling Peid’s case, held that when there is a person in possession of an office, who is expressly authorized by the statute or constitution to discharge its duties temporarily, till the *600 power upon whom the duty of election or appointment is devolved, can regularly act, the governor has no power to appo'ut, because no vacancy exists within the meaning of article 5, section 8 of the constitution; and that when the act creating an office and fixing the dux-ation of the term provides that the officer shall be elected by the legislature, and shall hold his office until his successor is elected and qualified, the failure of the legislature to elect at the expiration of the term, does not create such a vacancy as the governor is authorized to fill by appointment, but the incumbent holds until his successor is elected by the legislature.
To the same effect is The State v. Lusk, 18 Mo. 333. The office in controversy in this case was that of “ public printer,” created by a statute which fixed the term of office at two years, and until a successor was elected and qualified. The statute also provided that “ if the public printer should die or resign, or if from any other cause the office should become vacant, the governor shall appoint a public printer who shall give bond and qualify, and shall hold his office for the same time that the printer in whose stead he shall be appointed would have held,” and the constitution of the state provided, that “ when any office shall become vacant, the governor shall appoint a person to fill such vacancy,” etc. Lusk was duly elected to the office for a term which expired before the legislature, whose duty it was to elect a successor, had' done so. Afterward, there still being no successor elected by the legislature, the governor appointed one Treadway to fill the alleged vacancy. Upon this state of law and fact, the court held that the failure of the legislature to elect a successor to Lusk did not create a vacancy which the governor could fill by appointment, but that the incumbent, who was authorized to hold the office until his successor was elected and qualified, held over.
In Commonwealth v. Hardy, 9 Penn. St. 513, the Supreme Court of Pennsylvania held that the death of the person elected to fill the office of clerk of the Orphan’s Court, before ho had qualified himself according to law, does not create a vacancy; but the incumbent, who is authorized to *601 hold the office until his successor shall be elected and qualified, holds over. The office here in dispute was one created by the constitution of the state, which. provided that the incumbent should hold his office for three years, if he should so long behave himself well, and until his successor should be duly qualified. Hanly, having been elected to the office in October, 1845, duly qualified and entered upon his term on the 19th of December, 1845. In October, 1848, one Brooks was duly elected as his successor, but died before qualification. Broom, the relator, was appointed by the governor to fill the vacancy which, it was assumed by his appointment, would occur at the expiration of Hanly’s term of three years. The constitution of the state provided that any vacancy occurring in said office should be filled by appointment, to be made by the governor, to continue until the next general election, and until a successor should be elected and qualified. After the expiration of Hanly’s term of three years, the commonwealth, on the relation of Broom, prosecuted a proceeding in quo warranto to oust Hanly and to induct Broom. The judgment was for the defendant, upon the grounds above stated.
Other cases, more or less analagous to the one now under consideration, and tending to the same conclusion, have been cited by counsel, but we forbear to notice them in this opinion.

Information dismissed.

Welch, White, and Gilmore, JJ.,concurred; Rex, J. dissented.