# SUPREME COURT,

## STATE OF KANSAS.

## JULY TERM, 1893.

### PRESENT:

Hon. ALBERT H. HORTON, Chief Justice.
Hon. WILLIAM A. JOHNSTON, } Associate Justices.
Hon. STEPHEN H. ALLEN,

---

The State of Kansas, *on the relation of George W. Scott, County Attorney,* v. D. D. Parry.

1. Justices of the Peace—*Election in Cities.* The cities of the state of Kansas are "townships," within the meaning of the constitution and statutes, for the purposes of the election of justices of the peace, and such officers, although elected within a city, are not strictly city officers. Their official duties are not limited to the boundaries of the cities in which they are elected, nor by the provisions of the charters or ordinances of the city in which they reside. Their civil and criminal jurisdiction are coextensive with their counties, except as otherwise provided by law.

2. Women—*Right to Vote.* Chapter 230, Laws of 1887, does not confer upon women the right to vote for justices of the peace in the cities of the state. In one sense, such officers are township officers, rather than city officers.

*Original Proceeding in Quo Warranto.*

The petition of plaintiff alleges that the city of Arkansas City is a city of the second class, and as such is entitled to two justices of the peace; that on the 4th day of April, 1893, a regular city election was held and two justices of the peace

1—52 kas.

were voted for; that the city council, on the 7th day of April, met as a board of canvassers and canvassed the vote of the election and declared Isaac H. Bonsall and William S. Cline elected justices of the peace, and certificates of election were issued them by the mayor and clerk. Both Bonsall and Cline, within 10 days after receiving certificates, qualified and entered on the discharge of the duties of the office. Previous to the election, Cline and Parry were the justices of the peace in the city. Cline continued to hold his office, and Bonsall served notice on Parry that he had been elected as his successor, and had qualified, and demanded of him the records, papers, etc., of his office. This demand Parry refused to comply with, and has ever since held and exercised the office of justice of the peace.

The defendant, Parry, in his answer, alleges facts which he thinks entitle him to the office as against William S. Cline. These facts are substantially as follows: First, that at the election separate ballot boxes were provided for male and female voters, and that at former elections the votes of females were not counted for the office of justice of the peace, but that at this election the votes cast by the female voters were entered in the tally sheets by the officers of election, but in such a way that the votes of males and females for justices of the peace could be distinguished; that the city council, acting as a board of canvassers, canvassed the returns, and counted all of the votes so returned, both male and female, and as a result declared Cline and Bonsall elected. The defendant claims that the canvassing board should have excluded the votes of females, and if it had done so, Bonsall and himself would have been elected; the male vote being given as 1,098 for Bonsall, 708 for Parry, and 612 for Cline, while the count of the combined male and female vote gave Cline a majority of 65 over Parry, Bonsall being elected by either plan of counting. The answer further alleges, that the board of county commissioners has never canvassed the returns of the election, and has never declared anyone elected, or issued certificates to anyone; that Bonsall and Cline have filed the oath and

bond required by law, and that their bonds have been approved by the board of county commissioners; that Parry has filed with the county clerk his oath of office and bond, and that the board of county commissioners has refused to approve his bond, but at the time declared it to be a good and sufficient bond.  The defendant further avers, that the office of justice of the peace is a constitutional and township office, and not a city or school office; that females are not entitled to vote for such office, and that the law conferring municipal suffrage on women is in direct opposition to § 1, article 5, of the constitution, and is void.  The answer further alleges, that many female voters, knowing the custom that had prevailed at previous elections (of not counting female votes for justice of the peace), scratched out the names of candidates for justice of the peace, and did not vote for such office, while other of the female voters did not scratch out the names of the justices, believing that their ballots for justices would not be counted. The defendant further alleges, that within 20 days after the said election he instituted contest proceedings against the said W. S. Cline, and that said contest is still pending and undetermined.

To the second and third defenses of this answer, the plaintiff interposed a general demurrer that neither of said defenses states facts sufficient to constitute a defense to the action.  At the session of the court in September, 1893, this demurrer was overruled, and judgment rendered against the plaintiff and for the defendant for costs.

*George W. Scott,* county attorney, for plaintiff; *McDermott & Johnson,* and *Wm. Theophilus,* of counsel:

While the legislature declares cities of the second class townships for the purpose of electing justices of the peace, it never was intended that cities should, in fact, be townships. They have not a township organization nor anything similar to it.  Everywhere in the law justices of the peace in cities are treated as city officers.  Gen. Stat. of 1889, ¶ 7121.

The legislature intended that justices of the peace should be

elected at the same time, in the same way and by the same persons as the mayor and other city officers, and that the result should be determined and declared in the same way and by the same body. This seems to be exactly what the legislature meant when it declared that justices of the peace shall be "elected at the regular city election." See Gen. Stat. of 1889, ¶¶ 769, 772, 774.

We think there is no doubt but that the legislature intended to and did confer upon women the right to vote for justices of the peace in cities. By the act of 1887, (Laws of 1887, ch. 230, § 1,) it was enacted "that in any election hereafter held in any city of . . . the second . . . class, for the election of city or school officers, . . . the right of any citizen to vote shall not be denied or abridged on account of sex; and women may vote at such elections the same as men, under like restrictions and qualifications." See Gen. Stat. of 1889, ¶¶ 2662, 2667.

There is no provision made for a separate ballot box or other device by which the officers of election might know who or what officers the women were voting for. In fact, the use of a separate ballot box is a violation of that provision which prohibits the officers from inspecting the ballots. If the legislature intended that women should not vote for any particular office to be voted for at any election for city or school officers, it would have made the necessary provision to prevent them from voting for such officers. In the absence of such provisions, and in the absence of anything tending to make any distinction between voters, and in view of the declaration that women should vote the "same as men," the conclusion that the legislature intended that women should vote for justices of the peace in cities of the second class is irresistible.

Is the law of 1887 unconstitutional so far as it confers on women the right to vote for justices of the peace? We think not. See Const., art. 1, § 1; art. 3, §§ 1, 2, 5, 8, 9; art. 5, § 1. The constitution does not even require that justices of the peace shall be elected at the township election; and this court

has held, in *Ward v. Clark*, 35 Kas. 315, that § 48, chapter 110, of the General Statutes of 1868, providing for the election of justices of the peace at city elections, is constitutional. See *Wright v. Noell*, 16 Kas. 601.

The fact that a contest is pending between Bonsall and Cline is no defense to this action. *The State, ex rel., v. Buckland*, 23 Kas. 359.

*C. T. Atkinson*, for defendant:

Section 2 of article 4 of the constitution of Kansas prescribes that justices of the peace shall be elected on the first Tuesday of April, unless otherwise ordered by law. The time for holding the election for said office has been changed to suit the convenience of country voters, and remains the same as originally, for the same reason, in cities of the first, second and third classes. The law was enacted long before women had a right to vote for city and school officers, and the legislature certainly had not any idea of conferring the right to vote on women when it placed the said office in the list of those to be voted for at second-class city elections.

The holding of a certificate of election is only *prima facie* evidence of the right of the party to hold the office; and if the certificate is not given by the proper parties, as in this case, the courts will determine who has been elected, and especially will the courts determine the title to the office when a case has been submitted to them as has been this one, and will determine the same upon the merits of the case. *The State, ex rel., v. Buckland*, 23 Kas. 259, 262.

The board of county commissioners shall constitute a board of canvassers. Ch. 110, art. 2, §§ 9, 10, Gen. Stat. 1889; also see *The State v. Farrell*, 20 Kas. 214. When the title is irregular, the incumbent shall hold over until the courts shall decide who is elected. Throop, Pub. Off., § 332. An appeal will not lie from a board of canvassers when organized merely to canvass the returns. *Buckland v. Goit*, 23 Kas. 327. A justice of the peace is a township officer. *A. T. & S. F. Rld. Co. v. Rice*, 36 Kas. 596; *Odell v. Dodge*, 16 id. 448.

The office is also a constitutional one. Const., art. 3, § 9. It has none of the characteristics of a city or school office, a vacancy being filled by the chief executive of the state, and the incumbent has jurisdiction over the whole county, as has any other township justice of the peace.

The city canvassers have no right to sit as a contesting board in the determination of the title to a township office, and have no right to issue a certificate of election. The county board of canvassers shall determine titles to township offices. Gen. Stat. of 1889, ch. 36, art. 2, § 109. If Parry was elected by having a majority of the male votes, then he is his own successor, and this plaintiff has no right to this action. Parry has done everything he can to qualify himself, and what has not been done has been from the fault and fraud of others. He objected to the illegal canvassing of the votes by the mayor and city council, and, as they did not sit as a contesting board, could take no proceedings to reverse them. He claims that the women have no right as yet to vote for a constitutional officer, and, having been elected to the office by a majority of the male voters of the persons voting, he is entitled to his office.

The opinion of the court was delivered by

HORTON, C. J.: The pivotal question in this case is whether chapter 230, Laws of 1887, confers upon women the right to vote for justices of the peace in cities. Section 1 of chapter 230 reads:

"That in any election hereafter held in any city of the first, second or third class, for the election of city or school officers, or for the purpose of authorizing the issuance of any bonds for school purposes, the right of any citizen to vote shall not be denied or abridged on account of sex; and women may vote at such elections the same as men, under like restrictions and qualifications; and any women possessing the qualifications of a voter under this act shall also be eligible to any such city or school office." (Gen. Stat. of 1889, ¶ 1084.)

It was remarked in *The State v. Farrell*, 20 Kas. 214,

"that justices of the peace are township officers, and their election, even in cities, is in one sense a township election." See, also, *Borton v. Buck*, 8 Kas. 302.

Paragraph 7121, Gen. Stat. of 1889, providing for township officers, reads:

"No city of more than 2,000 inhabitants shall be included within the corporate limits of any township; but each of such cities shall constitute a township for the purpose of electing justices of the peace and constables as provided in this act, and for the exercise of the powers and jurisdiction of such officers, as prescribed by law. In such cities said officers shall be elected at the regular city election." (Gen. Stat. of 1868, ch. 110, § 48.)

In *Ward v. Clark*, 35 Kas. 317, it was observed:

"Nothing in the constitution requires that justices of the peace shall be elected at a general election, nor that all justices of the peace shall be chosen at the same election. The legislature has full power to classify the cities and townships of the state, and to prescribe that the election of justices of the peace in cities of the first class shall be held at one time, in cities of the second class at another time, and in townships outside of such cities at still another time, or to make any other like classification of the townships which it may deem proper. A law fixing the time for the election of justices of the peace in any such class, as has been done by said ¶ 48, and which operates alike upon all townships coming within that class, is a general law, and not obnoxious to the constitutional requirement that all laws of a general nature shall have a uniform operation throughout the state."

Article 3, § 9, of the constitution, ordains that two justices of the peace shall be elected in each township. If the legislature cannot make a city a township for the purpose of the election of justices of the peace, there can be no such constitutional officers for cities, as the constitution provides for justices of the peace in townships only.

Within the provisions of the constitution, the statutes of the state, and the decisions of this court, we do not think that a justice of the peace is strictly a city officer, and therefore we do not think that the election of a justice of the peace in

a city comes within the terms of chapter 230, Laws of 1887. Not only is a justice of the peace a constitutional officer, but, although elected in a city, he is a township officer, and his official duties are not limited to the boundaries of the city in which he is elected. In civil actions, the jurisdiction of justices of the peace is coextensive with the county wherein they may have been elected and reside. (Civil Proc. before Justices, § 1.) In all cases of misdemeanor in which the fine does not exceed $500, and the imprisonment does not exceed one year, the justices of the peace have concurrent original jurisdiction with the district court, coextensive with their respective counties. (Crim. Proc. before Justices, § 1.)

1. Justices of the peace—election in cities.

Arkansas City is a "township," within the meaning of the constitution and the statutes, for the purpose of the election of justices of the peace. We therefore hold that the women were not entitled to vote for justices of the peace at the election held in Arkansas City on the 4th day of April last, and that the votes cast by them for justices of the peace were illegal, and ought not to have been counted. As Parry received the votes of 708 male persons having the qualifications of electors, and as the votes of the women cast for Cline ought not to have been counted, Parry, and not Cline, was legally elected justice of the peace. As it appears that D. D. Parry was legally elected a justice of the peace at the election referred to, and as he has filed his oath of office and a good and sufficient bond, he cannot be ousted therefrom. The demurrer will be overruled. Judgment will be rendered against the plaintiff and for the defendant for costs.

2. Women—right to vote.

All the Justices concurring.