EDWARD BORTON v. J. JAY BUCK.

1. JUSTICE OF THE PEACE; *Term of Office; Failure to elect successor.* A justice of the peace is, under the constitution, elected for two years and until his successor is qualified, and no vacancy will occur in the office at the expiration of the two years by reason of a failure on the part of the people to elect his successor at the proper time, but he will continue to hold the office until a successor is duly qualified.

2. DIVISION OF TOWNSHIPS; CITIES; *Statute Construed.* Sections 48 and 49 of the act relating to townships and township officers, providing that each city of "more than two thousand inhabitants" "shall constitute a township for the purpose of electing justices of the peace and constables," and that "no change or alteration of the boundaries of a township or city shall vacate the office of any justice elected and residing therein," are not unconstitutional.

3. ———— When a township is divided and two townships are created out of the same, a justice of the peace of the original township will become a justice of the peace in the new township in which he resides at the time of the division.

4. ———— A city of the second class containing over two thousand inhabitants, is a township for the election of justices of the peace, etc.

5. ———— Where a township contains a town, and that town becomes a city of the second class containing over two thousand inhabitants, a justice of the peace residing in the town at the time the same becomes a city becomes a justice of the peace for said city.

6. JUSTICE OF THE PEACE; *Failure of successor to qualify; No vacancy.* The election of a person to the office of justice of the peace, and his refusal to qualify, will not create a vacancy in the office, but the person filling the office at the time of the election will continue to hold the same.

7. ———— *Executive Appointment.* The neglect or refusal of a duly elected justice of the peace to qualify, as provided by law, will not create a "vacancy" in such office within the meaning of section 11, article 3, of the constitution, so as to authorize the governor to fill the vacancy by appointment.

*Original Proceedings in Quo Warranto.*

ON the 5th of May, 1871, *Borton* filed in this court his petition for a writ of *quo warranto* against *Buck.* The constitution of Kansas, § 9, art. 3, provides that "two justices of

the peace shall be elected in each township, whose term of
office shall be two years;" and § 12 of said article provides
that "all judicial officers shall hold their offices until their
successors shall have been qualified." *Borton* in his petition
claims to be a justice of the peace of the city of Emporia,
Lyon county, alleges his election and qualification as justice
of the peace in April, 1869, and states no successor has been
elected and qualified; he alleges "that the said *J. J. Buck* has
usurped and intruded into said office of justice of the peace
for said city of Emporia, and now claims to hold and exercise
the rights, powers, and duties, and receive and enjoy the priv-
ileges, immunities, and emoluments pertaining to said office
of justice of the peace for said city of Emporia, and claims to
be the successor of this plaintiff in said office, without any
legal right or title to said office,   *   *   *   and against the
rights of the plaintiff herein." (The petition does not show
by what pretense or color of authority *Buck* claimed to be
entitled to the office, but as a matter of fact he had been
appointed by the governor to fill a supposed vacancy. *Post*,
p. 310.) *Buck* appeared, and demurred, claiming that the
petition did not state facts sufficient to constitute a cause of
action.

*J. Jay Buck*, defendant, in *pro. per.:*

1. Does the plaintiff clearly show his right to the office of
justice of the peace in and for the *city of Emporia*, Lyon
county, at any time subsequent to the first Tuesday of April,
1871? or, strictly, (as it is only alleged on the day of filing
petition, May 5th, 1871, that defendant has usurped the office
without stating any time, and as it will be taken strictly against
plaintiff,) was the plaintiff on May 5th, 1871, *de jure* a justice
of the peace of the city of Emporia?

There are only two ways by which plaintiff could become
such justice—an election by the people, and an appointment
by the governor. He does not claim the office in either of
the modes named. What is his claim? That he was elected
a justice of the peace of Emporia *township* in April, 1869;

that by a division of such township in 1870, and the organization of the *city* of Emporia, (he residing therein,) he became a justice of the peace of such *city;* and that there being no " successor " elected and qualified he continues in office.

The plaintiff evidently relies upon §§ 48 and 49 of the act relating to townships and township officers, under which certain " cities " are declared to be *townships* for certain purposes. If the legislature may create new townships it must so create one that there be, numerically, one more in the county, and not patch up something for a certain purpose only. Sec. 4, art. 9, of the constitution contemplates a full quota of township officers in each township; while here we have a township sought to be created with only justices of the peace and constables.

Sec. 49, ch. 110, p. 1092, General Statutes, cannot intelligently refer to the preceding section and at the same time apply to the case at bar, because in no possible contingency in the case at bar could the plaintiff be " thrown into a *township*." By the division he was thrown into a *city*. The plaintiff's construction of that section makes it a plain and palpable violation of § 11, art. 3, of the constitution, which provides that justices shall reside in their respective townships during their respective terms of office. And the plaintiff, by not removing into the *township* of Emporia " within a reasonable time," forfeited his right to said office.

2. Borton was elected a justice of the township. The legislature could not make Borton a justice of the *city* of Emporia; and the only way he could *remain* a justice of the township was to remove into it. If he never became a justice of the city, then he was not holding over *as such* May 5th, 1871, and has no ground of complaint against defendant.

So much of § 49, ch. 110, Gen. Stat., as says: " Such justice shall be deemed a justice of the township or city into which he may be thrown," is in violation of §§ 9 and 11, art. 3, of the constitution, and therefore void, and it is the duty of the court to declare it so. 14 Wis., 174; 7 Ohio St., 546; 7 Ind., 332, 339.

It is insisted that ever since Emporia was organized as a city of the second class, there has been a vacancy in the office of justice of the peace. 7 Ind., 326, 332; and 14 Wis., 163, is not in conflict, owing to § 6, art. 7, of the constitution of that state.

*Ruggles & Plumb*, for plaintiff:

1. The organization of the city of Emporia, out of the territory previously comprising a part of the township of Emporia, was a "change or alteration of the boundaries" of the said township. By the act of organizing, the city of Emporia, the territory comprised in the limits, became and was detached from the remainder of the former township of Emporia as fully and completely, for all purposes, as though it had never formed a part of it.

This "change or alteration" of boundaries took the plaintiff Borton out of Emporia township, and placed him in the city of Emporia, a separate township for all the purposes of his jurisdiction, and in fact for all purposes—the city being merely a township with certain corporate privileges added, such as the legislature might confer upon any other class of townships. This change did not vacate the office of said justice, but he became a justice of the peace for the city of Emporia by virtue of said change. Gen. Stat., p. 1092, §§ 48, 49.

Borton being legally elected, and having qualified, he was and is, by virtue of the provisions of §§ 9 and 12 of art. 3 of the constitution, entitled to the office not merely for the term of two years, but also for that indefinite time between the expiration of two years and the qualification of a successor. 9 Penn. St., 513; 10 Cal., 38; 18 Mo., 33; 2 Vroom, (N. J.) 42.

2. If the legislature cannot make a city a township for the purposes of the jurisdiction of justices of the peace, there can be no such officers for "cities," as the constitution limits justices of the peace to townships. 3 Wis., 805, 808.

Defendant's theory on this point not only overturns him, but the justices of all the cities of the state. They would not

even be officers *de facto*, because there can be no officer *de facto* where no officer *de jure* is provided for; and then all their acts would be void. 10 Mich., 250.

We think, that §§ 48 and 49 of ch. 110, Gen. Stat., are constitutional; that the city of Emporia is a "township" within the meaning of the constitution for the purposes of the election of a justice of the peace; that by a division of the territory, and the transfer thereby of Borton to the city he became a justice of the peace of the city, which justice he still remains. As defendant admits his intrusion into the office, plaintiff is entitled to a judgment of ouster.

The opinion of the court was delivered by

VALENTINE, J.: This is an original action of *quo warranto*, brought by the plaintiff Edward Borton, to inquire by what authority the defendant J. Jay Buck assumes to exercise the duties of the office of justice of the peace in and for the city of Emporia, Lyon county.

The plaintiff filed his petition, and the defendant demurred thereto on the ground that the petition does not state facts sufficient to constitute a cause of action. The petition states in substance among other things that in April, 1869, the Township of Emporia in said county contained within its boundaries the Town of Emporia, an incorporated village; that in said April said Borton and Felix G. Hunt were elected justices of the peace for said Township; that they both resided in the Town of Emporia; that in April, 1870, the Town of Emporia contained more than two thousand inhabitants, and was organized into a city of the second class; (Gen. Stat., 154, ch. 19, § 1; Laws of 1870, p. 114, ch. 49, § 1;) that the said Borton and Hunt continued to reside and hold their said offices in and for said city of Emporia; that in April, 1871, one justice of the peace only was elected, to-wit, said Hunt, who was his own successor; that there has not been any successor to Borton elected; that said Borton still remains a justice of the peace in and for said city, and that the defendant has usurped said office.

Does this petition state facts sufficient to constitute a cause

of action? It will undoubtedly be admitted that it states facts sufficient to show that the *defendant* has no right or title to said office; but does it state facts sufficient to show that the *plaintiff* has any such right? This is the only question in the case. It is claimed by the defendant, and we think rightly, that if the petition does not state facts sufficient to show that the plaintiff is entitled to the office then the plaintiff has no right to commence or prosecute this action, that in such case the County Attorney or the Attorney General only could commence or prosecute the action: Gen Stat., 760, code, § 654. The real question then is, whether the plaintiff has shown by his petition that he has a legal right to said office.

The plaintiff was elected a justice of the peace in April, 1869, and unless his office should become vacant by death, resignation, or removal therefrom, or by his removal from the township, he would hold the same until April, 1871, (art. 3, § 9 constitution,) and until his successor should be elected or appointed and qualified. (Art. 3, § 12, const.) Now, as neither death, resignation, nor removal has intervened to produce any vacancy in said office, how can it be said that said office has ever become vacant? The plaintiff still resides where he resided when he was elected, and has not been removed from his office by any legal proceedings. Then why does not the plaintiff still continue to be a justice of the peace? We think no satisfactory reason can be given why he does not.

1. Term of justice of the peace.

Emporia Township was divided by operation of law. The Town of Emporia became a city of more than two thousand inhabitants, and under the statutes first above cited was organized into a city of the second class; and also under the law it became a township for the purpose of electing justices of the peace, etc.: (Gen. Stat., 1092, ch. 110, § 48.) The balance of Emporia township of course also became a township. Therefore two townships for the purposes of justices of the peace, etc., were created out of Emporia township as it existed before the division. Before the division the plaintiff resided in what was called the Town of Emporia;

2. Division of Townships.

after the division he resided in the same place, but which was then called the city of Emporia, and under the provisions of § 49 of the chapter just cited he became a justice of the peace of that portion of Emporia township which had formerly constituted the Town of Emporia, but which after the division constituted the city of Emporia. His successor has never been elected or *qualified* (the qualification only is material,) and therefore he still remains a justice of the peace for the city of Emporia: Art. 3, § 12, Const.; *State v. Lusk*, 18 Mo., 333; *People v. Whitman*, 10 Cal., 38; *Commonwealth v. Hanley*, 9 Penn. St., 513. This seems clear to us.

We have carefully examined all the points made by counsel for defendant and do not consider them sufficient for the purpose he has made them. We do not think that it is necessary that every justice of the peace shall have precisely the same jurisdiction, or the same duties to perform. But if it is necessary, then the act imposing additional duties upon justices of the peace of cities would be void, and such void act would not oust such justices from their offices. Neither do we think that it is necessary that all the townships in the state shall have precisely the same powers, or precisely the same number and kind of officers, any more than it is necessary that all the cities or all the counties in the state shall have precisely the same powers, and precisely the same number and kind of officers. The constitution nowhere defines the powers or duties of townships, or the number or kind of officers that a township shall have. (Art. 9, § 2, Const.) This is all left to be prescribed by the legislature.

Neither does it appear to us that sections 48 and 49 of the "Act relating to Townships and Township Officers," (Gen. Stat., 1092,) are unconstitutional, as is contended by counsel for defendant. While we feel clear that section 49 is not unconstitutional so far as it affects this case, we also, after a careful consideration of all the possible divisions of townships that may be made, are unable to see how it would in any case be unconstitutional. Even if the division should work an increase of the number of the justices

Sections 48 and 49, ch. 110, held valid.

in any township it would not be unconstitutional for that reason, because the number of justices may rightfully and legally be increased by the legislature. (Art. 3, § 9, Const.)

The plaintiff does not hold his office by virtue of any election or appointment of the legislature. He holds it under an election of the people; and he still remains a justice of the peace for at least a portion of the people who elected him, and for a portion of the territory for which he was elected. We do not understand that the defendant claims that the legislature could by law legislate a justice of the peace out of office; but he does claim that the plaintiff was elected justice of the peace for Emporia township; that when said township was divided that that portion of the township not included within the city of Emporia became Emporia township; that the city became another township; that the plaintiff could act as justice only for the township for which he was elected, and therefore when the division was made that it was necessary for the plaintiff to remove into that portion of Emporia township which was not included in the city of Emporia. This claim of the defendant presupposes that said sections 48 and 49 are unconstitutional, which we do not admit.

As the city of Emporia of itself, after the division, constituted a township, there can be no good reason given why it may not as well be called "Emporia township" as that portion of the township outside of the city. We suppose it will hardly be claimed however that a justice of the peace is elected for a mere name, or for a township of a certain name. We suppose it will hardly be claimed that the mere name is of any great importance. If the township of Emporia had been equally divided and one-half called Neosho Township and the other half called Cottonwood Township we hardly suppose that it would be claimed that the plaintiff would thereby be ousted from his office, or that his office would thereby become vacant; and yet there would be no Emporia township in which he could hold his office. In fact, when a township is divided neither portion can technically be said to be the old township, unless a half can be said in such

*4. Cities are "townships" for certain purposes.*

cases to be the whole. In this connection we would refer to the case of *The State v. Dilloway*, 31 N. J., 42, and the other cases cited in the brief of counsel for plaintiff. The defendant claims that the case of *The State v. Messmore*, 14 Wis., 163, and perhaps one or two other cases, are against this view. The cases that he refers to are not parallel however with this. The Wisconsin case comes the nearest. That was an action to determine whether the defendant Messmore was circuit judge of the sixth judicial circuit; but as both the statutes and the constitutional provisions under which he claimed to hold differ from ours the decision in that case is not authority in this. We presume that decision was correct under the Wisconsin constitution and laws, but still there is very great room to doubt its correctness there, and it certainly would not be law here.

The demurrer to the petition is overruled, and judgment is rendered for the plaintiff in accordance with his petition.

All the Justices concurring.

AFTER the foregoing opinion was filed, the defendant *Buck* filed a motion for leave to answer the plaintiff's petition. This motion was supported by affidavit, and accompanied by a copy of the answer sought to be filed. The motion was heard and decided at the January Term, 1872. The facts alleged in the answer are fully stated in the following opinion of the court denying the motion:

*J. Jay Buck*, defendant, for the motion.
*Ruggles & Plumb*, for plaintiff, in opposition.

The opinion of the court was delivered by

VALENTINE, J.: This case was heard and decided at the last term of this court upon the petition of the plaintiff and the demurrer thereto of the defendant. The demurrer was overruled, and judgment rendered for the plaintiff on the petition. The defendant now asks to file an answer to the petition. He has shown by affidavit that he has used sufficient diligence, and

that he is entitled to file the answer provided it states any defense to the plaintiff's petition. The proposed answer is submitted with the affidavit for our inspection. The facts which the answer sets forth present only two new questions—only two questions which have not already been considered and decided in this case. First, it shows that at the regular election held in the city of Emporia on April 3d, 1871, one G. W. Frederick was duly elected a justice of the peace for the place now claimed by the plaintiff, but that said Frederick declined to qualify, and has never qualified; that after he was duly declared to be elected, and on the 5th of April, 1871, Frederick, by "a written communication to the Governor of Kansas, refused to qualify to said office, and requested the said governor to appoint and commission this defendant (Buck) to said office of justice of the peace for said city." Second, the answer also shows that on the 6th of April, 1871, the governor appointed the said defendant to said office, and that afterwards the said defendant duly qualified.

Are these facts a good defense to the plaintiff's action? Or, in other words, upon the admitted facts set forth in the plaintiff's petition, and these facts, is the plaintiff, or is the defendant, entitled to the said office of justice of the peace? The plaintiff was the justice of the peace April 3d, 1871; at that time Frederick was elected his successor; two days thereafter the votes were canvassed; Frederick was declared elected, and he declined to qualify; on the third day after the election the defendant was appointed by the governor; the defendant qualified; Frederick never qualified. Who, then, is the justice of the peace? Our statutes give a justice of the peace twenty days after he has been notified of his election within which to qualify: Gen. Stat., 1085, ch. 110, § 16. And it might be very seriously questioned whether the refusal of a justice 6. Election of of the peace to qualify, at any time previous to justice; fail- the expiration of the twenty days, would be of ure to quali- fy; no va- any force or effect, or whether an appointment of cancy. of another person to such office, founded upon such refusal, would be of any validity.

Could not the justice-elect, after he had refused to qualify, change his intentions within the twenty days, and then qualify? But without expressing any opinion upon this question, we shall pass to the others. The first question is, whether the election of Frederick, and his refusal to qualify, vacated the office held by the plaintiff. We think it did not. We have no statute or constitutional provision in this State, as they have in some of the other States, providing that if the successor to any person in office* shall fail to give bond or qualify, that the office shall be deemed vacant. And hence any decision in any State, founded upon such a statute or constitutional provision, can have no application in this State. On the contrary, we have a constitutional provision that declares that "All judicial officers shall hold their offices until their successors shall have been qualified." (Const., Art. 3, § 12.) This provision does not declare that a judicial officer shall hold his office until his successor shall refuse to qualify; or until after the time for him to qualify has elapsed; but it declares that such judicial officer shall hold his office until his successor shall have been qualified. And if his successor should never qualify, it would seem to follow as a necessary corollary, that such judicial officer could, if he should choose, continue to hold his office indefinitely. Under this constitutional provision, we think Borton, the plaintiff, continued to legally hold the office of justice of the peace, notwithstanding that his intended successor was elected and refused to qualify.

This brings us to the second question, which is: Was the act of the governor appointing the defendant a justice of the peace valid? It seems to be the policy of this State that all judicial officers shall be elected by the people. All are originally elected.

7. Vacancy in judicial office; when government or can fill by appointment. The governor can appoint judicial officers only to fill vacancies, and his appointees hold only till the next regular election, etc., (Const., art. 3, § 11,)

---

[ * The court use the term, "any person *in office*." No such provision exists as to *Township* officers, which class includes Justices of the Peace. But as to *County* officers, see § 179, ch. 25, Gen. Stat., p. 294; *The State, ex rel., v. Matheny*, 7 Kas., 327. And as to *State* officers, see § 81, ch. 103, Gen. Stat., p. 989.—Reporter.]

when their successors should be elected by the people: *State, ex rel. Watson, v. Cobb,* 2 Kas., 32, 53 to 56. And as almost every judicial officer who holds over after his term has expired. was elected by the people, we would expect to find that he would continue to hold his office under the constitution until his successor could be elected by the people, and that the governor could appoint only in a case where the office was absolutely vacant;[*] and such we think the constitution does provide. The governor can appoint only to fill vacancies. The constitution provides that, "In case of *vacancy* in any judicial office, it shall be *filled* by appointment of the governor until the next regular election that shall occur more than thirty days after *such vacancy* shall have *happened.*" Const., art. 3, § 11. Now the office in the present case was not vacant; it was already filled, and legally filled; and how an office filled can be an office vacant is not easily understood. There is no provision for the governor to remove a judicial officer, or to vacate his office. He cannot create a vacancy; he can only appoint when the "vacancy shall have *happened.*"

But it is claimed by the defendant that the office was vacant in one sense, though filled in another, when the said appointment was made. Even if this were true, (and that words can be used in different senses cannot be denied,) still it it was not vacant in the sense contemplated by the constitution: *Commonwealth v. Handy,* 9 Penn. St., 513; *State v. Lusk,* 18 Mo., 333. In order to prove that the office was vacant in the sense used in the constitution, the defendant lays down the following propositions: The term of office of a justice of the peace is just two years, and no more; the term of office of the plaintiff expired on the 5th of April, 1871, at the time when his successor was duly declared to be elected; after that time, and until his successor was qualified, he was filling a portion of his successor's term, and not a portion of his own term. Now admit that all of these propositions are true, and still they do not prove what

[* THIS should probably be qualified so as not to include the office of *Probate Judge,* said office being a County Office: §§ 84, 86, 179, ch. 25, Gen. Stat. See note, *ante* p. 312.—REPORTER.]

the defendant claims for them. An office is an entire thing; it is a unity, although it may be composed of many terms. It is not two offices because it may be composed of two terms. However many terms it may be composed of, it is still only one office. And although an officer's term may have expired, if he holds over he is still filling the office. An officer is as much filling the office after his successor has been elected, and before he has qualified, if we consider that he is then filling a portion of his successor's term, as though we should consider him to be filling an extended portion of his own term. If he is filling a portion of his successor's term, he is doing so under and by virtue of the constitution, the highest authority known to our State government; and how can his right to so fill it be abridged by the governor? A person may be elected to a judicial office when there is no vacancy, and qualify and take the office on the very day that his predecessor's term expires, or at any time afterwards within the time prescribed by law; but a person cannot be appointed to a judicial office unless an absolute vacancy has already occurred. He cannot be appointed in contemplation of a vacancy, which it is supposed may in the future be created.

It seems to be admitted by the defendant that if that portion of time, after an officer's successor has been elected and before he has qualified, is a portion of this officer's original term, then, that there was no vacancy in the case for the governor to fill. Our decision is that as Frederick never qualified, he never became a justice of the peace, but that the plaintiff continued to hold the office; that he continued to be the justice of the peace, and that there was no vacancy in the office for the governor to fill; and therefore that the plaintiff continues to hold the office, and that the defendant has no right thereto.

The defendant, who is a lawyer, has been his own counsel in this case. And he has shown by his ability in presenting his side of the same to this court, not only that he is amply competent to fill the office of justice of the peace, but that he needed no other counsel to assist him in this court. If we have erred, it is certainly not his fault.

The motion for leave to file an answer will be overruled, and the judgment heretofore rendered will be allowed to remain in full force.

All the Justices concurring.