**ROBISON, County Com'r, v. CHAPMAN et al.**

No. 23347. Opinion Filed June 28, 1932. Rehearing Denied July 27, 1932.

Houston B. Teehee, Miller & Miller, Hugh M. Bland, and H. M. Vance, for plaintiff in error.

Bruce L. Keenan and Robertson & Martin, for defendants in error.

RILEY, J. This action was commenced by C. T. Chapman, Mrs. Mabel Manship, C. F. Bliss, Mrs. Alice M. Keenan, executive officers of the Republican Party of Cherokee county, and Frank Warren, a Republican resident of said county, against D. E. Robison, having for its purpose the test of the right of defendant Robison to hold the office of county commissioner in district No. 1, of Cherokee county.

The petition was originally styled "State of Oklahoma on the Relation of the above-named executive officers and members of the Republican Party." By leave of court the words, "State of Oklahoma on relation of" were stricken on motion of plaintiffs.

The petition, after the general statement of the official character of certain of the plaintiffs and membership in the Republican Party in said county, in substance, alleges that at the general election held in said county in 1926, one John L. Wade was elected as county commissioner of said county for a term of six years, beginning on the first Monday in July, 1927, and ending June 30, 1933; that said Wade was a Republican and a member of the Republican Party and was elected as such; that on August 27, 1931, said John L. Wade was removed from said office, whereby a vacancy was created; that William H. Murray, the Governor, assumed to appoint defendant Robison to said office to fill said vacancy; that said pretended appointment contravenes the provisions of section 134, C. O. S. 1921, which provides that all vacancies in the board of county commissioners shall be filled by appointment of the Governor, provided that if the vacancy is caused by death, resignation, or removal, the person appointed to fill the vacancy shall be appointed from the same political party to which the officer elected thereto belonged, and shall serve until the next general election, and that the defendant Robison is not and was not a member of the Republican Party, but was a Democrat, and therefore ineligible to appointment to fill said vacancy; that he presumes to hold said office without lawful right and is an intruder therein. The petition also alleges that when said vacancy occurred, there were a number of citizens, including plaintiff Frank Warren, eligible politically as well as personally for appointment to said office.

Judgment was prayed declaring defendant Robison ineligible to hold said office, and that he be forthwith ousted therefrom.

To the petition defendant Robison filed a demurrer, setting forth three grounds as follows:

"(1) That the court has no jurisdiction of the subject of the action.

"(2) That the plaintiff relators have no legal capacity to institute and maintain the action.

"(3) That the petition does not state facts sufficient to constitute a cause of action."

The court overruled said demurrer in each particular. Defendant Robison elected to stand on the demurrer, whereupon the court entered its findings as follows:

"Thereupon the court finds all material allegations in plaintiffs' petition to be true and that the defendant, D. E. Robison, a member of the duly organized and recognized Democratic political party, is ineligible to be appointed to fill the vacancy in the office of county commissioner in and for county commissioner district No. 1, or the first county commissioner's district of Cherokee county, Okla., which vacancy was caused by the removal of the duly elected officer who was and is a member of the regularly organized and duly recognized Republican political party."

Judgment was entered accordingly, ousting defendant from said office, and defendant appeals.

Two propositions are presented:

It is first urged that the court erred in ruling that defendants in error have the legal capacity to sue, maintain, and prosecute this action against the plaintiff in error, and coupled with this it is urged that the court erred in holding that the petition was sufficient to call into exercise the jurisdiction of the court in this character of action, the same being quo warranto.

The action is a civil action provided for in section 458, C. O. S. 1921, amended by section 1, ch. 96, S. L. 1925, whereby the writ of quo warranto and proceedings by information in the nature of quo warranto were abolished.

Section 459, C. O. S. 1921, provides:

"Such action may be brought in the Supreme Court or in the district court, in the following cases:

"First. When any person shall usurp, intrude into, or unlawfully hold or exercise

any public office, or shall claim any franchise within this state or any office in any corporation created by authority of this state. * * *"

It is urged that defendants in error, plaintiffs below, being private persons having no interest in the office in themselves or either of them, could not maintain an action of this nature, and that said action could only be brought in the name of the state on the relation of the county attorney, or on the relation of the Attorney General, or by a private party claiming a right in himself in the office.

It has been held by this court a number of times that private individuals who have only a general public interest cannot maintain an action of this nature.

In Sugart v. Thorpe, 147 Okla. 152, 295 P. 605, it was held:

"Private individuals, who have only a general public interest, cannot maintain an action as interveners in quo warranto against a consolidated school district, although taxpayers thereof, even though the Attorney General or the county attorney declines to institute or prosecute such an action."

That was an action brought under said section to test the validity of the organization of a consolidated school district.

In Frittz v. Thorpe, 149 Okla. 219, 299 P. 884, the same rule was announced. The appeal came from an order of the district court striking the petition of certain interveners who attacked the right of respondents to hold office upon the same grounds that the right had been attacked in the same action brought by the county attorney, and after a demurrer had been sustained to the county attorney's petition. The order of the lower court striking intervener's petition was sustained on appeal.

In State ex rel. McFadyen, County Attorney, v. Holtzclaw, 151 Okla. 163, 2 P. (2d) 1022, it was held:

"An action in the nature of quo warranto under sections 459 and 460, C. O. S. 1921, to challenge the validity of a corporate school district and the ousting of official usurpers must be brought and prosecuted in the name of the state by its legal representatives, and where the legal representatives do not appeal from the action of the trial court, and do not appear in the Supreme Court in the prosecution of the appeal, held, the appeal should be dismissed as having not been prosecuted by the legal representatives designated by law."

At common law no one but the law officers of the crown could sue out a writ of quo warranto.

The statute of this state which abolishes the writ of quo warranto, substituting therefor a civil action by which the remedies theretofore obtainable under the writ of quo warranto and proceedings by information in the nature of quo warranto, and modifying the common-law rule with reference to who might prosecute the action, was adopted from the state of Kansas by the territory of Oklahoma. Stats. 1893, sections 4559 to 4566, inclusive.

In Borton v. Buck, 8 Kan. 302, a case involving the legal right to hold public office, it is said:

"It is claimed by the defendant, and we think rightly, that if the petition does not state facts sufficient to show that the plaintiff is entitled to the office, then the plaintiff has no right to commence or prosecute this action; that in such case the county attorney or the Attorney General only could commence or prosecute the action. Gen. Stat., 760, Code, sec. 654. The real question then is, whether the plaintiff has shown by his petition that he has a legal right to said office."

In Bartlett v. State, 13 Kan. 99, it is said:

"Now, as we have before stated, any individual in this state entitled to hold an office has such an interest therein that he may maintain an action in the nature of quo warranto to oust any intruder therefrom, and he may maintain the action in his own name and not in the name of the state (Laws of 1871, p. 277, sec. 2). But this right of action on the part of the individual does not oust the state from its right of action. Their separate rights of action are founded upon separate and distinct interests. The individual may prosecute the action because he is interested in the emoluments of the office and entitled to receive the same. The state may prosecute the action because it is interested in the good government and general welfare of all its citizens. It is the duty of the state to see that no intruder shall usurp and hold an office that should be legally filled by some other person."

Newman v. United States ex rel. Frizzell, 238 U. S. 537, 59 L. Ed. 1446, is a case arising under the laws of the United States, authorizing the issuance of the writ from the Supreme Court of the District of Columbia against any person who usurps, intrudes into, or unlawfully holds or exercises a franchise or public office, etc.

Act March 3, 1901, c. 854, section 1539, 31 Stat. at L. 1420, provides:

"The Attorney General or the district attorney may institute such proceeding on his own motion, or on the relation of a third person. * * *"

Section 1540 provides:

"If the Attorney General and district attorney shall refuse to institute such proceeding on the request of a person interested, such person may apply to the court by verified petition for leave to have said writ issued, and if in the opinion of the court the reasons set forth in said petition are sufficient in law, the said writ shall be allowed to be issued by any attorney, in the name of the United States, on the relation of said interested person, on his compliance with the condition prescribed in section 232 of this title as to security for costs."

Frizzell requested the Attorney General and the district attorney to institute quo warranto proceedings against Newman, who he claimed was not eligible to appointment to the office of Civil Commissioner of the District of Columbia. Both officers declined the request, whereupon Frizzell, alleging himself to be a citizen and taxpayer of the district, applied to and obtained permission from the Supreme Court of the district to use the name of the government in quo warranto proceedings.

Respondent demurred on many grounds, one of which was that Frizzell was not an interested person.

The United States Supreme Court in discussing the provisions of the Code, which appear to be more liberal than the statutes of Oklahoma in such matters, said:

"4. The Code—making a distinction between a 'third person' and an 'interested person'—recognizes also that there might be instances in which a person might have such an interest in the matter as to entitle him to a hearing, even where he had failed to secure the consent of the Attorney General or district attorney to use the name of the United States. Section 1540 deals with that case and provides that where these law officers have refused the request of a 'person interested,' 'he may apply to the court by a verified petition for leave to have said writ issue.' If, in the opinion of the court, his reasons are sufficient in law, the said writ shall be allowed to be issued in the name of the United States on the relation of said interested person on his giving security for costs.

"If the question of Frizzell's 'interest' here had depended upon a matter about which the evidence was in conflict, the finding of the Supreme Court might not be subject to review. But if the established facts show that, as a matter of law, he was not an 'interested person,' the court had no authority to grant him permission to use the name of the government, and the case must be dismissed. So that the fundamental question is whether the law of force in the District permitted him, as a private citizen, without the consent of the law officers, to test Newman's title to the public office of Civil Commissioner.

"Frizzell does not allege that he had been an incumbent of that office and had been unlawfully ousted before his term expired. He does not set up any claim to the office. And, of course, if he, as a citizen and a taxpayer has the right to institute these proceedings, any other citizen and taxpayer has a similar right to institute proceedings against Newman and all others who 'exercise within the District * * * a public office, civil or military.' District Code, sec. 1538 (1). Such result would defeat the whole policy of the law which still regards usurpation as a public wrong to be dealt with primarily by the public prosecutors.

"5. In a sense—in a very important sense—every citizen and every taxpayer is interested in the enforcement of law, in the administration of law, and in having only qualified officers execute the law. But that general interest is not a private but a public interest. Being such, it is to be represented by the Attorney General or the district attorney, who are expected by themselves or those they authorize to institute quo warranto proceedings against usurpers in the same way that they are expected to institute proceedings against any other violator of the law. That general public interest is not sufficient to authorize a private citizen to institute such proceedings; for if it was, then every citizen and every taxpayer would have the same interest and the same right to institute such proceedings, and a public officer might, from the beginning to the end of his term, be harassed with proceedings to try his title."

And:

"The interest which will justify such a proceeding by a private individual must be more than that of another taxpayer. It must be 'an interest in the office itself, and must be peculiar to the applicant'."

In support of the conclusions reached, the court cites decisions of the states of New Jersey, Pennsylvania, Missouri, Florida, Nebraska, West Virginia, Vermont, Washington, Indiana, Mississippi, Idaho, Kansas, Michigan, and Dakota. The general rule appears to be, except in those states where by statute the right is given to any person or citizen, that who has no direct personal interest is not entitled to maintain an action in the nature of the one here under consideration.

But it is contended that the allegation of plaintiffs that they were executive officers of the Republican Party in Cherokee county shows that they had an interest in the office beyond that of other members of the public, such as would entitle them to maintain the action.

The Supreme Court of the United States

in Newman v. U. S. ex rel. Frizzell, supra, discussing the meaning of the words "any person" and "person interested," as used in the Act of Congress there applicable, said:

"* * * It is evident that, in passing this statute, Congress used the words 'third person' in the sense of 'any person,' and the phrase 'person interested' in the sense in which it so often occurs in the law, prohibiting a judge from presiding in a case in which he is interested; preventing a juror from sitting in a case in which he is interested; and permitting interested persons to institute quo warranto proceedings. In the illustrations suggested, the interest which a judge had as a member of the public would not disqualify him from sitting in a case of great public importance and in which the community at large was concerned. The interest which disqualifies a juror from serving as well as the interest which would authorize this plaintiff to sue, must be some personal and direct interest in the subject of the litigation."

The words "any person" are not used in section 460, C. O. S. 1921. That section is construed as one enlarging the common-law rule as to who may maintain an action of this nature. To that extent the act of Congress referred to is broader than the statute of Oklahoma.

Conceding, without deciding, that the proviso contained in section 134, C. O. S. 1921, is a valid limitation on this power of appointment conferred upon the Governor, it is difficult to understand how the fact that plaintiffs are executive officers of the Republican Party would place in them a personal and direct interest in the office of county commissioner.

Section 134, C. O. S. 1921, is a declaration of public policy of the state that when a county office becomes vacant by death, resignation. or removal of an elected officer, the person appointed to fill such vacancy "shall be appointed from the same political party to which the officer elected belonged." This, it would seem, makes the question one of public interest, and one in which the members of all political parties, Democratic as well as Republican, have an interest alike, viz., that common interest that every citizen is interested in the enforcement of law, in the administration of law, and in having only qualified officers execute the law. However, that interest is not a private interest but a public one. Newman v. U. S. ex rel. Frizzell, supra. Being such, it is to be represented by the Attorney General. or by the county attorney. The former, when directed so to do by the Governor, or either branch of the Legislature; the latter, in the same way that he is expected to institute proceedings against any other violator of the law.

Section 13, art. 6, of the Constitution, in defining the powers of the Governor, provides:

"* * * When any office shall become vacant, he shall, unless otherwise provided by law, appoint a person to fill such vacancy, who shall continue in office until a successor shall have been duly elected or appointed, and qualified according to law."

The other proposition presented is that, under this provision of the Constitution, the Governor has the unrestricted power to appoint any person to fill a vacancy in the office of county commissioner, and that, as applied to offices created by the Constitution, section 134, C. O. S. 1921, in so far as it attempts to limit that power to the selection of a person who is a member of the same political party as that to which the elective officer belonged, is inoperative.

Having concluded that plaintiffs could not lawfully commence and maintain the action, we deem it unnecessary to discuss the second proposition.

The judgment of the trial court is reversed and the cause is remanded, with directions to dismiss the action.

HEFNER, CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. ANDREWS, J., concurs in conclusion. LESTER, C. J., and CLARK, V. C. J., absent.