Larry E. JACKSON, Petitioner,

v.

Honorable Richard W. FREEMAN, District Judge, Honorable Donald Howard, Special District Judge, Honorable Wendell Smith, Special District Judge, all of Oklahoma County, Respondents. (Two Cases.)

Nos. 85630, 85649.

Supreme Court of Oklahoma.

Oct. 3, 1995.

C. Rabon Martin, Todd G. Tucker, Mitchell M. McCune, Tulsa, for Petitioner.

Neal Leader, Senior Assistant Attorney General, Oklahoma City, for Respondents.

SUMMERS, Justice.

This proceeding is an attack upon the recently enacted statutes authorizing an Emergency Appellate Division of the Court of Criminal Appeals, 20 O.S.Supp.1994 §§ 60.1–60.5, inclusive. We assume original jurisdiction pursuant to Okla. Const. Art. 7 § 4. The two original proceedings brought by Petitioner are hereby consolidated. We conclude that the Emergency Appellate Division

statutes are constitutional, and deny relief to the petitioner.

Larry E. Jackson was tried by a jury in Tulsa County, convicted on a drug-related charge, and received a life sentence. The Presiding Judge of the Court of Criminal Appeals assigned Jackson's appeal to Emergency Panel No. 26E of the Court of Criminal Appeals. Jackson seeks a writ in the nature of quo warranto, and challenges the authority of the judges assigned to that panel.

The three respondent judges were appointed to serve on the Emergency Appellate Division by the Chief Justice of the Supreme Court on July 5, 1994. The order of appointment states that the judges listed therein serve on the emergency panels until June 30, 1995. The order also states that the appointment does not create a public office.

The petitioner states as the issue presented in his petition: "Does the establishment of the Emergency Appellate Division of the Oklahoma Court of Criminal Appeals violate the Oklahoma Constitution?"

### THE REMEDY

Petitioner's arguments demonstrate the impropriety of an action in the nature of quo warranto as a remedy here. Historically, the majority view has been that one could seek quo warranto against an officer, but not against the office that the officer represents. *State ex rel. Wah–We–Yea–Cuming v. Olson*, 107 Minn. 136, 119 N.W. 799, 800, 21 L.R.A. (N.S.) 685 (1909); *State ex rel. Tolle v. Shufford*, 77 Kan. 263, 94 P. 137, 138 (1908); *State ex rel. Gibbs v. Somers Point*, 49 N.J.L. 515, 10 A. 377 (1887). It is true that in our case today the named respondents are individuals, but this practice in an action brought by an individual of naming the officers to attack the entity or office was condemned a century ago. See *State ex rel. Steelman v. Vickers*, 51 N.J.L. 180, 17 A. 153 (1889), where a challenge to an act authorizing a municipality could not be brought as a quo warranto proceeding against an official of the municipality.

█ Originally, quo warranto was not a proceeding to vindicate private rights. *John-*

*son v. Manhattan Ry. Co.*, 289 U.S. 479, 502, 53 S.Ct. 721, 77 L.Ed. 1331 (1933). We recognized this, saying that our Legislature had expanded the remedy by statutes "so as to permit a private person to contest with another private person the right or title to public office." *Newhouse v. Alexander*, 27 Okla. 46, 110 P. 1121, 1122 (1909). This explains our quo warranto statutes, which indicate that a proper plaintiff is the Attorney General, the District Attorney, or a contestant for the office at issue. *Hendrick v. Walters*, 865 P.2d 1232, 1236 n. 11 (Okla. 1993); 12 O.S.1991 §§ 1531, 1533.

█ In a proceeding pursuant to our quo warranto statutes the plaintiff must possess an interest in the office itself that is peculiar to the plaintiff. *Robison v. Chapman*, 158 Okla. 244, 13 P.2d 173, 176 (1932). We said that every citizen has a common interest in the enforcement of the law, in the administration of the law, and in having only qualified officers execute the law. *Id.* 13 P.2d at 177. We concluded that this interest shared by all members of the public was insufficient for an individual to bring quo warranto, *Id.*, but that the State may bring quo warranto to vindicate an interest shared by the citizens of the State. *Callender v. District Court, etc.*, 625 P.2d 627, 630 (Okla. 1981). Consistent with this rule we have stated that "if the petition [of an individual] does not state facts sufficient to show that the plaintiff is entitled to the office then the plaintiff has no right to commence or prosecute the action,...." *Robison v. Chapman*, 158 Okla. 244, 13 P.2d 173, 175 (1932), quoting, *Borton v. Buck*, 8 Kan. 302 (1871), (explanation added).

█ Thus quo warranto is an action used by an individual to assert a substantive right in a particular office claimed by that individual. The petitioner in our case today cannot maintain quo warranto to challenge the validity of the Emergency Appellate Division of the Court of Criminal Appeals. He has no quo warranto standing sufficient to bring such a proceeding. But this conclusion does not necessarily require dismissal of the action.

This Court possesses the power to review jurisdictional claims lodged against the Court of Criminal Appeals. We have reviewed such claims by certiorari and prohibition to the Court of Criminal Appeals. *Carder v. Court of Criminal Appeals*, 595 P.2d 416, 420 (Okla.1978). We have also assumed jurisdiction in prohibition on a request to restrain enforcement of a judgment on a claim that an inferior court was not properly constituted. *Rath v. LaFon*, 431 P.2d 312 (Okla.1967). Prohibition may be used to restrain the exercise of official authority when the office does not legally exist. *Nichols v. Levy*, 151 Okla. 245, 1 P.2d 766 (1931), *overruled on other grounds in Dobbs v. Board of County Commissioners*, 208 Okla. 514, 257 P.2d 802, 810 (1953). Further, we explained in detail in *State ex rel. Rucker v. Tapp*, 380 P.2d 260 (Okla.1963) why the remedy of prohibition, as opposed to quo warranto, was the proper remedy when the question presented was whether the inferior tribunal was legally constituted. *Id.* 380 P.2d at 267. We thus construe Jackson's petitions as a collateral attack in prohibition that challenges the enforceability of the opinion issued by the Emergency Appellate Division of the Court of Criminal Appeals.

### THE MERITS

Jackson argues that the panel hearing his appeal did not meet our constitutional requirements. He argues that a judge of the Court of Criminal Appeals shall be elected, citing Art. 7 § 3, that Special District Judges have limited jurisdiction, and that a Special District Judge cannot be temporarily assigned to hear cases in a court other than the district court for which that special judge is employed, citing Art. 7 §§ 6, 8.

The legislation under attack is located in Title 20, Chapter 2A—Emergency Appellate Panels, and is codified at 20 O.S.Supp.1994 §§ 60.1–60.5. Section 60.1(A) establishes the Emergency Appellate Division of the Court of Criminal Appeals:

> There is hereby established within the Court of Criminal Appeals an Emergency Appellate Division which shall have the power to determine or otherwise dispose of any cases assigned to it by the Court of Criminal Appeals, except cases concerning convictions for murder in the first degree as defined by Section 701.7 of Title 21 of the Oklahoma Statutes.

Section 60.1 also provides that the Court of Criminal Appeals may recall a case assigned to a panel of the Emergency Appellate Division. A decision of a panel of the Emergency Appellate Division may be reviewed by the Court of Criminal Appeals upon the filing of a Petition for Review if a majority of the Court of Criminal Appeals agrees, showing a similarity with the Court of Appeals in civil litigation in that regard. *Id.* at § 60.1(B). *See* 20 O.S.1991 § 30.1, (review of decision of Court of Appeals by Supreme Court on petition for certiorari).

The Emergency Appellate Division is composed of district judges, associate district judges, and eligible special judges. A special judge is eligible for appointment if he or she has a minimum of four years judicial experience. 20 O.S.Supp.1994 § 60.2. These judges are appointed to the Division by an order of the Chief Justice of the Oklahoma Supreme Court. *Id.* The Presiding Judge of the Court of Criminal Appeals appoints emergency appellate panels of three judges each from the pool of judges appointed by the Chief Justice. 20 O.S.Supp.1994 §§ 60.1(C), 60.3(B).

At one time the Oklahoma Constitution gave to the Legislature the express power to create courts: "The judicial power of this State shall be vested in ... and such other courts, ... as may be established by law." R. Williams, *The Oklahoma Constitution and Enabling Act*, Art. 7 § 1 (2d ed. 1941). The legislatively-created court was required to be inferior to the Supreme Court. *Leatherock v. Lawter*, 45 Okla. 715, 147 P. 324, 325 (1915).

In 1967 changes were made to Article 7 of the Constitution. See *R. J. Edwards, Inc. v. Hert*, 504 P.2d 407, 409–410 (Okla.1972). At the time Article 7 was changed one of the issues debated was whether the legislature should retain the power to create courts. For example, when the former version of Art. 7 § 1 was in effect Dean Sneed explained one proposed form of Article 7 § 1:

The present Constitution provides for five constitutional courts and *such other courts as may be established by law.* Through the years, in addition to the five constitutional courts, the Legislature has created at least nine additional courts.

We have 12 kinds of courts at the moment and the existence and jurisdiction of some is always in doubt. The proposal simplifies by providing for only one court, divided into two Appellate Courts and two Trial Courts. Further, no power is given to the Legislature to create additional courts. If such a power is given, and history repeats, confusion and patch work could come again to Oklahoma.

E. Sneed, *A Proposed Judicial Article for Oklahoma,* 37 O.B.J. 613 (March 26, 1966), (emphasis in original). *See also* E. Sneed, *The Sneed Plan Revisited,* 39 O.B.J. 1457 (August 31, 1968)

The language of Art. 7 § 1 now in effect shows a compromise position between the old version allowing the legislature to create courts, and the "Sneed Plan" withdrawing that power from the legislature. The present version of Art. 7 § 1 states:

The judicial power of this State shall be vested in the Senate, sitting as a Court of Impeachment, a Supreme Court, the Court of Criminal Appeals, the Court on the Judiciary, the State Industrial Court, the Court of Bank Review, the Court of Tax Review, and such intermediate appellate courts as may be provided by statute, District Courts, and such Boards, Agencies and Commissions created by the Constitution or established by statute as exercise adjudicative authority or render decisions in individual proceedings. *Provided that the Court of Criminal Appeals,* the State Industrial Court, the Court of Bank Review and the Court of Tax Review and such Boards, Agencies and Commissions as have been established by statute *shall continue in effect, subject to the power of the Legislature to change or abolish said Courts,* Boards, Agencies, or Commissions. Municipal Courts in cities or incorporated towns shall continue in effect and shall be subject to creation, abolition or alteration by the Legislature by general laws, but shall be limited in jurisdiction to criminal and traffic proceedings arising out of infractions of the provisions of ordinances of cities and towns or of duly adopted regulations authorized by such ordinances. (Emphasis added.)

This section states the Legislature shall have the power to: (1) provide intermediate appellate courts; (2) create or provide for the exercise of adjudicative authority by boards, agencies, or commissions in individual proceedings; (3) change or abolish the Court of Criminal Appeals, the State Industrial Court, the Court of Bank Review and the Court of Tax Review and such Boards, Agencies and Commissions as have been established by statute; and (4) create, change, or abolish municipal courts. The question is whether the creation of the Emergency Appellate Division is within the Legislature's power to change the Court of Criminal Appeals.

This is not the first time that the Legislature has exercised its power to change or abolish certain courts. In 1977 the legislature changed the State Industrial Court by replacing it with the Workers' Compensation Court. *Hermetics Switch, Inc. v. Sales,* 640 P.2d 963, 965 n. 2 (Okla.1982). The Court of Tax Review has been the subject of change by legislation. See 68 O.S.Supp.1994 § 3024. The Court of Bank Review was abolished in 1980. See 1980 Okla.Sess.Laws Ch. 360 § 3. Indeed, the Legislature enlarged the Court of Criminal Appeals from three judges to five in 1987. See 20 O.S.Supp.1987 § 31.

 Generally, we do not look to the Constitution to determine whether the Legislature is authorized to do an act, but rather, to see if the act is prohibited. *Reherman v. Oklahoma Water Resources Bd.,* 679 P.2d 1296, 1300 (Okla.1984); *Tate v. Logan,* 362 P.2d 670, 674–675 (Okla.1961). A constitutional restriction on the legislative power is construed strictly. *Draper v. State,* 621 P.2d 1142, 1146 (Okla.1980). *Davis v. Thompson,* 721 P.2d 789, 792 (Okla.1986). The constitutional restriction is construed so that matters not covered by the constitutional language will be within the power of the Legislature. *Hughes Drilling Co. v. Crawford,* 697 P.2d 525, 530 (Okla.1985); *Draper v. State, supra;* and *Davis v. Thompson, supra.* In applying

these rules it is obvious that the Oklahoma Constitution gives to the Legislature the power to alter, change, or restructure the Court of Criminal Appeals, and we conclude that 20 O.S.Supp.1994 §§ 60.1–60.5, inclusive, are consistent with this power. Okla. Const. Art. 7 § 1.

Jackson's argument equates the right to an appeal before the Court of Criminal Appeals with a right to have a judge of that Court issue an opinion in the appeal. This is incorrect. The Legislature restructured the Court of Criminal Appeals to the extent that it authorized emergency panels of that Court to render decisions in appeals. This restructuring is within the power of the Legislature granted by Art. 7 § 1. The Legislature gave to that Court the power to exercise judicial discretion (with one express limitation) as to which appeals could be decided with an opinion by the emergency panel, and with subsequent discretionary review by the Court. This restructuring of the Court of Criminal Appeals is within the Constitutional grant of power to the Legislature.

Jackson argues that Special Judges have limited jurisdiction. The Oklahoma Constitution states that: "The jurisdiction of Special Judges shall be limited as may be prescribed by statute." Okla. Const. Art. 7 § 8(h). Jurisdiction conferred upon special judges to participate in the Emergency Appellate Division *is* granted pursuant to statute, and is thus within the constitutional grant of Art. 7 § 8(h).

Jackson further argues that a Special District Judge cannot be assigned to a court of a different county, and thus a Special Judge cannot be assigned to the Emergency Appellate Division. (Two of the three Respondents are Special District Judges.) The first conclusion is contrary to one authority who wrote that a special judge may be transferred to any District Court in the State. G. Fraser, *Oklahoma's New Judicial System,* 21 Okla.L.Rev. 373, 378 (1968). Jackson's argument that assignments from lower to higher courts, or higher to lower, is unauthorized, is simply incorrect. This Court's constitutionally granted administrative power includes "the temporary assignment of *any* judge to a court other than that for which he was selected." Okla. Const. Art. 7 § 6. (emphasis added) This Court may assign any judge from one court to another. See *Parks v. Taylor,* 892 P.2d 638 (Okla.1995), where we exercised our administrative power to assign a judge of the Court of Appeals to hear a matter pending in a District Court. We reject Jackson's interpretation of this Court's administrative power.

Finally, Jackson argues that the appointed temporary judges are not elected, and thus cannot be judges of the Court of Criminal Appeals. This argument presupposes that the temporary judges are judges of the Court of Criminal Appeals. They are not. They are not entitled to the compensation of office given to the judges of the Court of Criminal Appeals. 20 O.S.Supp.1994 § 60.5. They are not appointed to the office of a judge of the Court of Criminal Appeals, and the order of appointment states that no public office is being created by the appointment. See *McKye v. State Election Bd.,* 890 P.2d 954, 958 (Okla.1995) where we commented that a person holding an office receives pay during tenure and a person not in office does not. The appointed judges are not judges of the Court of Criminal Appeals, but judges of emergency panels of the Court, for the purpose of rendering opinions in criminal appeals for, and on behalf of, the Court of Criminal Appeals.

Jackson's argument fails to take into consideration that a judge may exercise adjudicative power while sitting on a tribunal other than that on which the judge serves. Judges in this state frequently sit on a different court pursuant to a legislatively authorized judicial assignment. The Court of Tax Review is comprised of district judges selected by the Supreme Court. 68 O.S.Supp.1994 § 3024. The Court of Bank Review, before it was abolished, consisted of three district judges. See 1978 Okla.Sess.Laws Ch. 161 § 1, amending 6 O.S.1971 § 207. Both the Trial Division and the Appellate Division of the Court on the Judiciary have judges in their ranks who are judicial officers by virtue of their holding other judicial offices. Okla. Const. Art. 7–A § 2. Using judges of the

district courts to staff the emergency panels does not violate Article 7.

 The bottom line is that the Court of Criminal Appeals, although kept in place by the Constitutional reforms of 1967, is a legislative Court because of the powers expressly given to the Legislature to change it or abolish it. We conclude that the legislative creation of the Emergency Appellate Division for the Court of Criminal Appeals does not run afoul of Article 7 of the Oklahoma Constitution. We assume original jurisdiction and deny prohibition to Petitioner.

ALMA WILSON, C.J., and HODGES, LAVENDER, HARGRAVE, SUMMERS and WATT, JJ., concur.

KAUGER, V.C.J., concurs in result.

SIMMS and OPALA, JJ., concur in part, dissent in part.

SIMMS, Justice, concurring in part, dissenting in part.

I agree with the majority that this action in the nature of quo warranto is not proper. I would therefore dismiss it and wait to answer these serious constitutional questions until they are raised in a proper action seeking a correct remedy.