Dear Senator Ron,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
Does 19 O.S. Supp. 2005, § 1710.1[19-1710.1] of the Emergency MedicalService District Budget Act, which among other things requires anemergency medical service district which provides ambulanceservices through contracts with ambulance service providers touse at least 90% of all revenues collected for payment of thecontracts, impermissibly interfere with the constitutionalauthority vested in emergency medical service districts byArticle X, Section 9C of the Oklahoma Constitution?
¶ 1 Emergency medical service districts are authorized by Article X, Section 9C of the Oklahoma Constitution. One or more boards of county commissioners may call a special election which will determine whether such a district shall be formed and may authorize an annual recurring ad valorem tax levy of not more than three mills. Okla. Const. art. X, § 9C(a). The purpose of the revenue raised by the tax levy is the "support, organization, operation and maintenance of district ambulance services." Id.
Each district is governed by a board of trustees, the five members of which are appointed by the board or boards of county commissioners which called the special election forming the district. Id.
¶ 2 The Oklahoma Constitution vests the board of trustees with various powers, including the power to sue and be sued, issue bonds, contract, hire appropriate personnel, and otherwise manage the district. See Okla. Const. art. X, § 9C(a), (b), (i). Article X, Section 9C(a) specifically states, in pertinent part, that the "board of trustees shall have the power and duty to promulgate and adopt such rules, procedures and contract provisions necessary to carry out the purposes and objectives of these provisions" and "to hire a manager and appropriate personnel, contract, organize, maintain or otherwise operate the emergency medical services within said district and suchadditional powers as may be authorized by the Legislature."Id. (emphasis added).
¶ 3 The Emergency Medical Service District Budget Act ("Act") is found at 19 O.S. 2001 Supp. 2005, §§ 1701 to 1723. The Act's stated purposes include establishing "uniform and sound fiscal procedures" for district budgets and ensuring "that their directors administer their respective functions in accordance with adopted budgets[.]" 19 O.S. 2001, § 1702[19-1702](1), (2). Various provisions of the Act, among other things, provide for the organization of the board of trustees, require the board of trustees to levy for a sinking fund, require hearings on each year's proposed budget and prohibit certain expenditures. See,e.g., id. §§ 1707, 1710, 1714, 1717.
¶ 4 Your question refers specifically to the recently enacted19 O.S. Supp. 2005, § 1710.1[19-1710.1] of the Act, which states:
 A. Any proceeds collected pursuant to the provisions of Section 9C of Article X of the Oklahoma Constitution shall only be expended for the purpose of providing funds for the support, organization, operation and maintenance of district ambulance services, known as emergency medical service districts.
 B. Emergency medical service districts formed pursuant to said Section 9C of Article X of the Oklahoma Constitution may own and operate the ambulance service or may provide ambulance service through contracts with one or more ambulance service providers.
 C. Emergency medical service districts that provide ambulance services through contracts with one or more ambulance service providers shall utilize not less than ninety percent (90%) of all revenues collected by the district for payment of such contracts to said providers.
Id.
¶ 5 In considering the constitutional validity of legislative enactments, the Oklahoma Supreme Court held:
 The Constitution (Art. 5, Sec. 36) vests in the legislature the supreme power to enact laws to meet the needs of the State; the Legislature's acts are presumed constitutional and should be upheld unless plainly and clearly within express prohibitions and limitations fixed by the Constitution . . .; and any doubt should be resolved in favor of the power of the Legislature.
Spearman v. Williams, 415 P.2d 597, 600 (Okla. 1966) (citations omitted). In Jackson v. Freeman, 905 P.2d 217, 221
(Okla. 1995), the court emphasized that:
 Generally, we do not look to the Constitution to determine whether the Legislature is authorized to do an act, but rather, to see if the act is prohibited. A constitutional restriction on the legislative power is construed strictly. The constitutional restriction is construed so that matters not covered by the constitutional language will be within the power of the Legislature.
Id. (citations omitted).
¶ 6 However, the Oklahoma Supreme Court has also explained, with respect to Okla. Const. art. V, § 36, that although the "section was incorporated in the constitution to preclude the idea of the exclusion of power by implication[,]" the provision is concerned with implied limitations "which might otherwise arise from grants of power to the Legislature, not those arising from grants of power to other constitutional entities." Bd. ofRegents v. Baker, 638 P.2d 464, 466 n. 3 (Okla. 1981). InBaker, the Oklahoma Supreme Court held that an implied limitation on legislative authority was the principle that "[e]very positive delegation of power by the Constitution to one officer or department of government implies a negation of its exercise by any other officer or department." Id. at 466.Baker also found that "Article XIII, § 8 of the Oklahoma Constitution establishes the Board of Regents of the University of Oklahoma as an independent body charged with the power to govern the University." Id. at 469. The court struck down legislation directing all agencies, including the Board of Regents, to increase employee salaries, declaring that "determination of faculty salaries is clearly an integral part of the power to govern the University and a function essential in preserving the independence of the Board." Id.
¶ 7 The boards of trustees of the emergency medical service districts are constitutionally vested with the general power to organize, operate, and maintain the districts; however, the enabling constitutional provision, unlike the constitutional provision in Baker, expressly contemplates the Legislature having some say with respect to the powers exercised by the district. See Okla. Const. art. X, § 9C. We note the court's acknowledgment in Baker that "constitutionally assured independence cannot be equated with complete immunity for [sic] legislative regulation." Baker, 638 P.2d at 469. Accordingly, we must determine whether the power granted by the Constitution to the Legislature, to authorize additional powers for the boards of trustees of emergency medical service districts, includes the power to impose the spending restrictions with respect to contracts found in 19 O.S. Supp. 2005, § 1710.1[19-1710.1].
¶ 8 In Ethics Commission v. Cullison, 850 P.2d 1069 (Okla. 1993), the Oklahoma Supreme Court resolved a conflict with respect to the distribution of power between two government entities created under the Constitution. Id. at 1071-72. The Oklahoma Constitution requires the Ethics Commission to promulgate rules of ethical conduct of state officers and for campaigns for elective state office. Okla. Const. art. XXIX, § 3. The Oklahoma Constitution also grants the Commission the power to, "when it deems appropriate," prosecute violations of its rules governing ethical conduct in District Court. Okla. Const. art. XXIX, § 4. Cullison reviewed an attempt by the Legislature to enact its own statutes regulating the ethical conduct of state employees and officials and to place limitations on the Ethics Commission's exercise of discretion in determining whether to prosecute violations. See Cullison, 850 P.2d at 1071-72.
¶ 9 The court recognized that "the power exercised in creating, modifying, and repealing Ethics Commission Rules is shared between the Ethics Commission and the Legislature." Id. at 1075-76. However, the court found that the "decision to prosecute for violations of the rules of the Commission is constitutionally vested in the Ethics Commission, and the Legislature may not impose such a condition on the exercise of that discretion."Id. at 1075. The court also held that legislative enactments that contained legislative statements of Ethics Commission policy, regulated ethical conduct of state officers and employees, and provided for procedures before the Commission had "the effect of replacing the constitutional power and role of the Ethics Commission as a constitutional rule-making authority for regulating the conduct of state officials." Id. at 1076-77. The court explained that those enactments would have been constitutional "as to the method of enactment if enacted in the form of Commission rules or as [a] Legislature-modification [sic] of an effective Commission rule." Id.
¶ 10 Article X, Section 9C of the Oklahoma Constitution grants the boards of trustees of emergency medical service districts the power to promulgate rules, procedures and contract provisions necessary to implement the constitutional provision. In construing similar language in a constitutional provision applicable to the Department of Public Welfare (now the Department of Human Services), the Oklahoma Supreme Court stated:
 This mandatory constitutional requirement that the Commission formulate policies for the effective administration of its duties is indicative of a constitutional mandate from the people to the Commission to legislate when necessary to accomplish effectively the duties imposed upon the body. This Court has committed itself to the proposition that the essence of the legislative function is the determination of policy[.]
City of Sand Springs v. Dep't of Pub. Welfare, 608 P.2d 1139,1146 (Okla. 1980).
¶ 11 Similary, the boards of trustees of emergency medical service districts have been vested with the discretion to determine policy by establishing rules and procedures and each has the power and role of a "constitutional rule-making authority." Cullison, 850 P.2d at 1077.
¶ 12 Title 19 O.S. Supp. 2005, § 1710.1[19-1710.1] attempts to supplant the power and role of the boards of trustees of emergency medical service districts. The Constitution gave the Legislature the authority to grant additional powers but not to restrict the powers expressly granted by the Constitution. The legislation at issue does not grant additional powers to emergency medical service districts. The Oklahoma Supreme Court has said, with respect to an entity with duties, powers and authorities "fixed and vested in it" by the Constitution, that:
 [T]he Legislature could not divest it of these powers nor any part thereof, for, if it could lawfully take a part, it could from time to time take more, and ultimately take all, and thereby defeat the will of the people who fixed the status of this board in the organic law of the state.
Trapp v. Cook Constr. Co., 105 P. 667, 669 (Okla. 1909) (emphasis added); see also Oliver v. Okla. Alcohol BeverageControl Bd., 359 P.2d 183, 185 (Okla. 1961) ("Although the Legislature cannot decrease The Board's constitutional powers, it may increase such authority and delegate additional powers to such board."). In Baker, the Oklahoma Supreme Court made it clear that judgments regarding the allocation of resources are decisions that are an "integral part of the power to govern" and "essential in preserving the independence of the Board." Baker,638 P.2d at 469. The boards of trustees of emergency medical service districts were given the power and duty to develop their own "rules, procedures, and contract provisions" and to "organize, maintain or otherwise operate the emergency medical services" district. Okla. Const. art. X, § 9C(a). Title 19 O.S.Supp. 2005, § 1710.1[19-1710.1] attempts to displace a board of trustees' policy-making discretion with respect to the allocation of resources and contracting priorities. The Legislature cannot limit the Board's constitutionally vested authority in this regard.
¶ 13 It is, therefore, the Official Opinion of the AttorneyGeneral that:
 Title 19 O.S. Supp. 2005, § 1710.1[19-1710.1] of the Emergency Medical Service District Budget Act unconstitutionally interferes with the authority vested in emergency medical service districts by Article X, Section 9C of the Oklahoma Constitution by displacing a board of trustees' policy-making discretion with respect to the allocation of resources and contracting priorities.[1]
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 JOANN T. STEVENSON Assistant Attorney General
[1] An Attorney General Opinion stating that an act of the Legislature is unconstitutional should be considered advisory only and is not binding until upheld by an action in district court. State ex rel. York v. Turpen, 681 P.2d 763, 767 (Okla. 1984).