Whit INCE, Petitioner,

v.

CHESTER WESTFALL DRILLING CO.,
Employers Mutual Insurance Co., and the
State Industrial Commission, Respondents.

No. 38395.

Supreme Court of Oklahoma.

Sept. 15, 1959.

Rehearing Denied Nov. 3, 1959.

Application for Leave to File Second
Petition for Rehearing Denied

Dec. 1, 1959.

Farmer & Kerr, Oklahoma City, for petitioner.

Butler, Rinehart & Morrison, Oklahoma City, Mac Q. Williamson, Atty. Gen., for respondents.

BERRY, Justice.

On the 20th day of February, 1957, Bryan Lawrence Ince, employee of Chester Westfall Drilling Company, sustained an accidental injury resulting in his death.

On the 16th day of October, 1957, Whit Ince, decedent's surviving widow, filed a claim for compensation against decedent's employer, Chester Westfall Drilling Company, and its insurance carrier to recover death benefits under the provisions of the Workmen's Compensation Law, 85 O.S. 1951 § 1 et seq., stating that on the 20th day of February, 1957, decedent, while in the employ of Chester Westfall Drilling Co. sustained an accidental injury arising out of and in the course of his employment resulting in his death.

The trial judge at the close of the evidence denied claimant's claim for compensation on the ground that the injury sus-

tained by decedent and his consequent death did not arise out of and in the course of his employment, which order was sustained on appeal to the Commission en banc.

Claimant brings the case here for review and contends that the order entered by the Commission is not supported by the evidence and is contrary to law. In support of this contention, claimant asserts that at the time of the fatal accident decedent was acting within the scope of his employment for the reasons that (a) at said time decedent was carrying an empty water can, which was the property of his employer, from the drilling site where he worked to his home for the purpose of being filled with water and returned to the drilling site so that members of the drilling crew could drink the water, and (b) at said time he was engaged on a "special mission" for his employer which special mission resulted from decedent's immediate superior, the driller under whom decedent worked, directing decedent to drive him by a person's home in order to employ said person to work with the drilling crew that decedent worked with.

The evidence shows that on the day decedent sustained his fatal injury he was employed by Chester Westfall Drilling Company as a roughneck on its drilling rig. His hours of work were from 3 o'clock in the afternoon until 11 o'clock at night. His employer did not transport him nor agree to furnish transportation for him to and from work. The evidence further shows that the workmen of the drilling crew entered into agreement whereby each member of the crew alternated in furnishing his automobile for transporting other workmen to and from their work. In the afternoon of the day in question, decedent drove his automobile and transported other members of the crew, including Hites, the driller, who was also a member of the pooling agreement, to a well being drilled by the drilling company near Lindsay, Oklahoma. After finishing his day's work, decedent transported Graham and Wagner, who were members of the drilling crew, to their respective homes. After Graham and Wagner had been driven to their respective homes, Hites told decedent he wanted to go by the home of Mr. Thompson for the purpose of hiring him to take the place of an employee who was transferred to another job; that decedent could drive him by Thompson's home or he could take him to his (Hites') home and he (Hites) could get his car and drive over to see Thompson. Decedent then replied that it was only half a block out of his way and he would drive Hites by Thompson's home, which he did. Hites then employed Thompson and decedent proceeded to take Hites to his home and then started home. He was traveling over Highway 77 between Lindsay and his home when he collided with an automobile driven by a third party, causing his death.

As heretofore pointed out, decedent was transporting an empty water can owned by decedent's employer, which can was used in carrying water from the home of the employee who transported the drilling crew to the drilling site where the water was drunk by members of the crew. This practice had apparently been carried on for a long period of time prior to the accident. We have held on a number of occasions that street and highway accidents are covered by the Workmen's Compensation Law where the employment requires the employee, in the performance of his work, to be upon the streets and highways. Weatherbee Electric Co. v. Duke, Okl., 294 P.2d 298, and cases therein cited. In Helmerich & Payne, Inc. v. Gabbard, Okl., 333 P.2d 964, 965, we held that an injury sustained by an employee of a drilling crew, while en route from his home to the drilling site, would be considered as arising out of and in the course of his employment when at said time employee was transporting employer's water container for use at drilling site. In that case we said this:

"* * * In Weatherbee Electric Co. v. Duke, supra, the employee was in his regular course of travel to his place of work and was carrying ma-

terial for the employer. An award was sustained.

" * * * We think the water container can be classified as material being hauled for the employer. It is the common practice for the employer to furnish drinking water under the circumstances of this case and had been done."

Respondents, however, seek to distinguish that case from the case at bar for the reason that decedent in the above case sustained an injury while conveying the water can to his place of work, while in the instant case decedent sustained his injury on his return trip to his home carrying the empty water can in his automobile when he sustained his fatal injury. We fail to see where this variation in the facts serves to distinguish. It was necessary that the empty water can be returned for the purpose of further use in transporting drinking water to the place of employment of the employees of respondent drilling company. The empty water can may therefore be properly classified as material being hauled for decedent's employer and for its benefit.

We are of the opinion that the rule announced in Helmerich & Payne, Inc. v. Gabbard, supra, is controlling here, and following the rule therein announced we hold that the accidental injury sustained by decedent in this case arose out of and in the course of his employment.

In view of our decision herein it is unnecessary to pass upon the issue of whether decedent was engaged in a "special mission" for his master at the time the fatal accident occurred within the purview of Dawson v. Oklahoma City Casket Co., Okl., 322 P.2d 642, 645 and cases therein cited.

Order denying compensation vacated and case remanded for further proceedings in conformity with this opinion.

WILLIAMS, V. C. J., and HALLEY, BLACKBIRD and JACKSON, JJ., concur.

DAVISON, C. J., and JOHNSON and IRWIN, JJ., dissent.