**Rick Allen WALKEY, Petitioner,**

v.

**TRIAD DRILLING COMPANY and National Union Fire Insurance, Respondents.**

No. 85716.

Court of Appeals of Oklahoma, Division No. 4.

Oct. 24, 1995.

Certiorari Denied Feb. 22, 1996.

Duke Halley, David B. Christian, Halley & Christian, Woodward, for Petitioner.

Larry C. Brawner, Brawner & Brawner, Oklahoma City, for Respondents.

## OPINION

GOODMAN, Presiding Judge.

The claimant, Rick Allen Walkey, seeks review of an order of a Workers' Compensation Court three-judge panel vacating the trial court's award of temporary total disability benefits based upon a finding that his injuries did not arise out of and in the course of his employment. Based upon our review of the record and applicable law, we sustain the order.

### I

On April 9, 1994, the claimant, a resident of Woodward, Oklahoma, was employed as a drilling rig floorhand by Triad Drilling Company out of its Woodward office. He was injured when the pickup truck in which he was one of three passengers was involved in a severe single-vehicle accident while returning from a drillsite one hundred miles from his home in Woodward. The claimant testified that during his two-and-one-half year employment with Triad, he had worked as a rig floorhand on a "[c]ouple dozen" locations averaging between seventy and eighty miles from Woodward. The rigs operated twenty-four hours a day, with three crews usually consisting of four workers—a driller or "boss" of the crew, a derrick hand, and two floorhands.

The crew members customarily met in Woodward and car pooled to the drillsite. The claimant testified that it was each crew member's personal responsibility to go to and from the drillsite and, although Triad did not require the crew to car pool, they did so at the driller's request so he could be assured that he had a full crew when he arrived at the rig location. The crew took turns driving to the drillsite; the driver paid for gasoline and neither the driver nor the passengers were reimbursed or otherwise compensated by Triad for time traveling to or from the drillsite.

Another crew member testified that during his twelve-year employment with Triad, "they have always met and car pooled and gone to the location ... [t]hat's just the way it's done...." By the same token there was testimony that car pooling was "just a courtesy" among crew members, and "was the easiest way to do it and it's the least expensive." In addition, the passengers "decided to ride together because you had to leave so early in the morning and three of you would get to sleep while one of you would drive."

On the day of the accident, it was the claimant's turn to drive. The claimant did not have a truck so the driller, who "had an emergency in Missouri he had to attend" and could not accompany the crew, left his personal truck for the claimant to drive. However, when the other two crew members, who lived between 10 and 20 miles from Woodward, arrived at the claimant's home between 3:30 and 4 a.m., they were running late and, because their truck was already warm, they decided to take it instead of the driller's truck. Someone transferred the driller's personal water can from his truck to the other truck, and the crew proceeded to "stop at a store [to] get gas, water, food, you know, whatever we needed for [the] day" before heading for the rig location near Sweetwater, Oklahoma, approximately 100 miles from Woodward. The truck carried no equipment or tools belonging to Triad.

After working an eight-hour shift, the crew returned to Woodward via their regular route. Approximately 45 miles from Woodward, the vehicle's left front ball joint broke, causing the driver to lose control and the vehicle to become airborne before coming to rest. One passenger was killed; the claimant and driver were injured. The claimant was released from the hospital after one week; his Form 3 alleged injury to his back, neck, left lung, and right wrist.

The employer denied that the claimant had sustained injuries arising out of and in the course of his employment. Instead, the employer argued, at the time the claimant was injured, he was simply traveling from the job and therefore was not in the course of his employment.

In an order filed February 15, 1995, the trial court found the claimant had sustained injury to his back, neck, left lung, and right hand (wrist) arising out of and in the course of his employment. The court awarded temporary total disability benefits and reserved the issue of permanent disability.

The employer appealed to a three-judge panel which found the claimant had not sustained a work-related accidental injury, and vacated the order upon finding it "was contrary to law and against the clear weight of the evidence."

. The claimant seeks our review, contending the order is not supported by competent evidence.

## II

■■■ In an action seeking workers' compensation benefits, an employee must prove that his injury arose out of *and* in the course of his employment. *Thomas v. Keith Hensel Optical Labs,* 653 P.2d 201, 202 (Okla.1982). The issue presents a question of fact and we "must accept as binding the trial tribunal's findings of fact which are supported by competent evidence." *Id.* at 203. *"Whenever conflicting or inconsistent inferences may be drawn from undisputed facts, the issue is not one of law but one of fact." Id.*

■■■ Generally, an injury which occurs while an employee is going to or coming from work is not considered to arise out of and in the course of that employee's employment. *Grossnicklaus v. Big X,* 355 P.2d 871, 873 (Okla.1960). This general rule is, however, subject to certain exceptions, two of which the claimant alleges apply here: "the trip was a dual-purpose trip or the employer designated a mode of transportation to and

from the drilling site." The claimant argues that (1) "the car-pooling arrangement was a benefit" to the employer by avoiding delays at the drillsite and insuring "that an adequate rig crew arrived at the rig site"; (2) the car pooling crew members "were expressly directed by their driller to meet in Woodward and travel to the rig site together"; and (3) it is undisputed "that the crew took water and food to the rig site, essential items due to the locale of the various rig sites." [1]

Each of the claimant's conclusions could be inferred from the evidence. In *Grossnicklaus,* 355 P.2d at 873, the court considered similar arguments and said:

Claimant argues it was his duty to go to work earlier in order to pick up the crew and that it was a longer route by reason of his having to go for the crew. The driller testified that the car pool and agreement as to transportation of himself and the crew was for the benefit of himself as driller and any requirement as to the use of the car by reason of the pool was a personal benefit to each individual member of the crew and was not an agreement of employer. *There was no employment by reason of agreement of the members of the crew as to the use of the individual cars involved in the pool in so far as applied to the personal transportation of the members of the crew.* (Emphasis added.)

We have reviewed the record, and conclude that conflicting inferences could be drawn from the undisputed facts. However, we hold that competent evidence supports the conclusion of the three-judge panel that the claimant was not injured in the course and scope of his employment. *Parks v. Norman Municipal Hosp.,* 684 P.2d 548 (Okla. 1984). The claimant's first proposition of error is without merit.

---

1. The "water can" cases cited by the claimant are distinguishable in that the can in question in each was the property of the employer and was being transported by the employee within the scope of his employment. In this matter, the water can being transported was the personal property of the absent driller *not* the employer, and was thus being transported for the convenience of the crew inasmuch as testimony was elicited that drinkable water was provided by the employer at the well location. *See, e.g., Ince v. Chester Westfall Drilling Co.,* 346 P.2d 346 (Okla. 1959); *Hughes v. Haco Drilling Co.,* 340 P.2d 472 (Okla.1959).

## III

The claimant next contends the three-judge panel lacked jurisdiction to render judgment because one of the members of the panel's split majority, a retired district court judge, had been specially designated to sit on the panel in violation of statutory provisions requiring the panel to be composed of three judges, each duly appointed to one of the ten designated, numbered positions of the Workers' Compensation Court.

The record before us does not contain documentary evidence of the nature or source of the special designation. The employer, however, recites in its brief that the Chief Justice of the Oklahoma Supreme Court issued an order assigning an active retired district court judge to sit on a three-judge panel scheduled for May 19, 1995. This court may take judicial notice of adjudicative facts, not subject to reasonable dispute, if a fact is "[c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." 12 O.S.1991 § 2202(B)(2).

On December 12, 1994, the Chief Justice of the Oklahoma Supreme Court filed an "Order Assigning Retired Judges To Active Service," naming, among others, the Honorable William H. Henderson. An order assigning him "to judicial service in the Workers' Compensation Court, Oklahoma County, to serve on a three judge court en banc panel scheduled for May 19, 1995" was executed by the chief justice March 23, 1995. The reliability of these documents of record cannot reasonably be disputed, and are readily capable of accurate determination by resort to sources whose accuracy cannot reasonably be questioned—the Workers' Compensation Court Clerk and Court Administrator. We therefore take judicial notice that the active retired judge in question was sitting on the panel pursuant to an order of the Chief Justice of the Oklahoma Supreme Court.

The claimant contends, nonetheless, "[i]f that is the case, with all due respect to the Chief Justice, the Chief Justice lacked the power to appoint." He argues that "the clear intent of the Legislature [is] expressed at 85 O.S. Sections 1.2, 3 and 3.6" and cannot be circumvented. We disagree.

Our state constitution vests the Supreme Court with "general administrative authority over all courts in this State, including the temporary assignment of any judge to a court other than that for which he was selected . . . and shall be exercised by the Chief. Justice in accordance with its rules." Okla. Const. art. 7, § 6. Furthermore, "[a]ny retired Justice or Judge may, in the discretion of the Supreme Court, be assigned to Judicial service." Okla. Const. art. 7, § 11(c). *See also* 20 O.S.1991 § 1107.

In 1993, the Uniform Retirement System for Justices and Judges, 20 O.S.1991 and Supp.1994 §§ 1101 through 1111, was amended to specifically provide for supreme court assignment of senior status and active retired judges to duties which:

> may include, but shall not be limited to, settlement efforts, consideration of motions, consideration of special proceedings, administrative duties, and research and writing of opinions. *Such duties may or may not include courtroom participation.* 20 O.S.Supp.1994 § 1104B(C) (emphasis added).

The legislature may establish limitations on the creation and operation of courts of statutory origin; it may not legislate so as to infringe our supreme court's constitutionally guaranteed "general administrative authority *over all courts in this State.*" Okla. Const. art. 7, § 6; *see, e.g., Jackson v. Freeman,* 905 P.2d 217 (Okla.1995); *Parks v. Taylor,* 892 P.2d 638 (Okla.1995). Such administrative authority includes assignment of active retired judges to temporary duty on a three-judge panel of the Workers' Compensation Court. We hold the claimant's argument to the contrary is without merit.[2]

---

2. The claimant's challenge to the composition of the three-judge panel presents a jurisdictional question, and may thus be raised for the first time in this review. Although we hold the omission of documentation appointing the active retired judge to sit on the panel is an omission from the appellate record which may be cured by judicial notice, the better practice would be for the respondent in such a case to designate the appropriate documentation to be included as part of the appellate record submitted for our review.

## IV

The claimant last urges us to re-examine the standard of review promulgated in *Parks v. Norman Municipal Hospital*, 684 P.2d 548 (Okla.1984). We decline the claimant's invitation.

ORDER SUSTAINED.

RAPP, V.C.J., and STUBBLEFIELD, J., concur.